Samuel PROCTER, Petitioner-Appellant,

v.

Robert H. BUTLER, Sr., Warden, Louisiana State Penitentiary, et al., Respondents-Appellees.

No. 86–3553.

United States Court of Appeals, Fifth Circuit.

Nov. 16, 1987.

Robert Habans, Jr., New Orleans, La. (court-appointed), for petitioner-appellant.

Mark D. Rhodes, Asst. Dist. Atty., Houma, La., for respondents-appellees.

Before THORNBERRY, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

In 1976, a Louisiana state court convicted Samuel Procter and a co-defendant of one count of armed robbery, eight counts of attempted first degree murder, and one count of attempted second degree murder. The Louisiana Supreme Court affirmed Procter's conviction. *State v. Proctor* [sic], 354 So.2d 488 (La.1977). After unsuccessful state court collateral review of his conviction, Procter brought this petition for habeas corpus in the district court. That court dismissed the petition and Procter appeals. We affirm.

The following facts are not in dispute. On February 21, 1976, Samuel Procter entered the RGS supermarket in Houma, Louisiana and ordered employees to fill a paper bag with money from the cash registers. After Procter drew a revolver, the employees complied. Procter then fled from the supermarket in a Chevrolet driven by his accomplice—and later his co-defendant—Willie Young. While employees of the supermarket called police, a young woman who was present during the robbery reached her car and followed Young and Procter until she was able to flag down a Houma policeman. The police car, soon joined by another police car that was summoned by radio, chased Young and Procter. During the chase, Procter leaned out the passenger side window of the car and fired shots at the policemen.

Young and Procter were able to evade the first policemen, but others soon spotted the Chevrolet and likewise gave chase. Procter again fired at his pursuers, and the police returned fire. In the meantime, the police had set up three roadblocks. At the first roadblock, Procter and the police exchanged shots, but he evaded capture by turning down a side street. At the second roadblock, Young accelerated and struck

the rear end of a police car parked across the road. The impact caused the police car to spin around, striking Detective Frank Finane. Young and Procter continued on. At the third roadblock, Young ran full force into the side of a truck parked across the road. The impact seriously damaged Young's car, blowing out the right front tire, but Young was able to drive around the truck and continue fleeing from pursuing officers. As Young drove away, the car struck Deputy Wayne Ledet, and the impact threw Ledet several feet.

At last, the police managed to catch up to the escaping Chevrolet. While officers in one car fired at Young and Procter, another car struck their car from the rear, forcing it off the road. Wounded and unconscious, Procter and Young were taken into custody.

The state charged Procter with one count of armed robbery and nine counts of attempted first degree murder. Seven of the counts of attempted murder arose from Procter's firing shots at the pursuing policemen. The other two counts arose from the injuries to Detective Finane and Deputy Ledet as Young and Procter evaded the last two roadblocks. The jury convicted Procter as charged on all counts, except that it returned a verdict of attempted second degree murder in the case of Frank Finane.

## I.

Procter's first argument in this habeas petition rests on the unconstitutionality of the trial court's instruction to the jury that "the law presumes that the defendant intended the natural and probable consequences of his act." For the purposes of this appeal, we assume that *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) applies retroactively and that the trial court's instruction unconstitutionally shifted to the defendant the burden of proof of an element of the offense.[1] But Procter's counsel at trial failed to object to the improper instruction. As a result, Procter waived any complaint about the instruction under Louisiana's contemporaneous objection rule. La.Code Crim.P. art. 841; *see also State v. Henry*, 449 So.2d 486, 488 (La.1984); *State v. Mart*, 419 So.2d 1216, 1218 (La.1982). Consequently, Procter is prohibited from raising his constitutional argument in this federal habeas procedure unless he can show both " 'cause' for failing to object to the instruction, and ... 'prejudice' by the unconstitutional instruction." *Johnson v. Blackburn*, 778 F.2d 1044, 1047 (5th Cir.1985) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977)); *see also Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 1572–73, 71 L.Ed.2d 783 (1982) ("We reaffirm ... that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate *cause* and *actual prejudice* before obtaining relief.") [emphasis added].

Procter argues that his counsel had "cause" for the failure to object because a constitutional claim on account of the burden-shifting presumption was, at the pre-*Sandstrom* trial in 1976, "so novel that its legal basis [was] not reasonably available to counsel."[2] *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984). We

1. Although the Supreme Court has never held that *Sandstrom* applies retroactively, it has held that *Sandstrom*'s predecessor cases apply retroactively. *See Hankerson v. North Carolina*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (holding that *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) applies retroactively); *V. v. City of New York*, 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972) (holding that *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) applies retroactively).

2. At oral argument, Procter's counsel also urged that the ineffective assistance of Procter's trial

counsel constituted "cause" for the failure to object to the *Sandstrom* violation. In *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986), however, the Supreme Court decided that counsel's failure to recognize or raise a claim does not constitute cause for a procedural default unless counsel's performance is constitutionally ineffective under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because we decide that Procter's counsel was not ineffective under the *Washington* standard, *see infra* Part III, that ground cannot provide "cause" for the failure to preserve the *Sandstrom* claim.

hold, however, that a *Sandstrom* claim was not novel in 1976. This view follows from the Supreme Court's decision in *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) that *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) provided a sufficient basis to anticipate and object to a burden-shifting state procedural rule. The trials at issue in *Engle* took place in 1975, before the 1976 trial in the present case. Even so, *Engle* refused to allow the habeas petitioners to raise the burden-shifting claim that they had failed to raise in state court.

> *In re Winship* ... laid the basis for their constitutional claim. In *Winship* we held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." During the five years following this decision, dozens of defendants relied upon this language to challenge the constitutionality of rules requiring them to bear a burden of proof. In most of these cases, the defendants' claims countered well-established principles of law.

*Engle*, 102 S.Ct. at 1573–74 [footnotes and citations omitted]. Because the Supreme Court held in *Engle* that counsel in a 1975 trial should have objected to state procedural rules that shifted the burden of proof to the defendant, Procter's counsel in a 1976 trial should have made the same objection.

*Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) provides additional reason for defense counsel in 1976 to have anticipated a *Sandstrom* claim. In *Mullaney*, the Supreme Court applied *Winship* to invalidate a Maine requirement that placed the burden on a defendant to prove the mitigating facts necessary to reduce a murder charge to manslaughter. *Mullaney* "thus explicitly ac-

knowledged the link between *Winship* and constitutional limits on assignment of the burden of proof." *Engle*, 102 S.Ct. at 1574 n. 42.

■ Because the legal basis for *Sandstrom* was reasonably available to Procter's counsel at the time of the 1976 trial, there was no "cause" under the standard of *Wainwright v. Sykes* for failing to object to a *Sandstrom* violation.[3] As a result, Procter is now prohibited from raising the same constitutional claim.

## II.

Procter's second argument is that *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) entitles him to an evidentiary hearing to determine whether the prosecution unconstitutionally used its peremptory challenges to exclude blacks from the jury at his trial. Under *Batson*, when the defendant produces evidence raising the inference of purposeful racial discrimination by the prosecutor in exercising peremptory strikes, the state must present a racially neutral explanation for its challenges. *Id.* 106 S.Ct. at 1723.

■ *Batson*, however, does not apply to Procter's circumstances. *Allen v. Hardy*, —— U.S. ——, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986) unequivocally held that "*Batson* should not be applied retroactively on collateral review of convictions that became final before our opinion was announced." A conviction becomes final when "the availability of appeal [has been] exhausted, and the time for petition for certiorari [has] elapsed." *Id.* 106 S.Ct. at 2880 n. 1 (quoting *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 1734 n. 5, 14 L.Ed.2d 601 (1965)). Because Procter's conviction became final long before *Batson* was decided, Procter cannot make a constitutional claim that rests on *Batson*.[4]

---

3. Because we hold that Procter has not demonstrated "cause" for the failure to object, we need not consider whether Procter might have demonstrated "actual prejudice."

4. Recently, the Supreme Court announced a change in its general standard for determining when new constitutional criminal procedure

rules should apply retroactively. Under the old "clear break" doctrine, the Court would not apply a new constitutional rule retroactively if the rule explicitly overruled a past precedent of the Supreme Court. This doctrine underlay the rationale of *Allen v. Hardy*. *Allen* refused to apply *Batson* retroactively to cases on collateral review at the time *Batson* was announced for the

## III.

Procter's third argument is that his counsel at trial provided constitutionally ineffective assistance. Procter points to three instances of claimed deficient conduct: his counsel's failure to make *Batson* objections, his counsel's failure to make *Sandstrom* objections, and his counsel's mere "perfunctory arguments for the petitioner, including a closing argument of only 109 words."

The standard governing constitutional claims for the ineffective assistance of counsel is that of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail, a defendant

> must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* 104 S.Ct. at 2064.

The burden that *Washington* imposes on a defendant is severe. In evaluating whether an attorney's performance was deficient, courts should be highly deferential, respecting the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 2065. Further, in evaluating whether any errors prejudiced the defense, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 2067. Instead, the defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068. The defendant must show more than a mere possibility, but by less than a preponderance of the evidence, that the error affected the trial. *Id.*

Applying the strict standard of *Washington* to Procter's claims, we cannot conclude that Procter's trial counsel provided ineffective assistance. Assuming, without deciding, that the representation fell below an objective standard of reasonableness, Procter has failed to demonstrate a reasonable probability that, without these errors, the outcome in his case would have been any different.[5]

█ First, it is clear that a *Batson* objection would have served little purpose because Procter's trial was governed not by *Batson, see supra* Part II, but by the difficult-to-meet standard of *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Under *Swain*, a defendant asserting that the prosecutor's exercise of peremptory strikes was racially motivated had to prove a historical pattern or practice of race-conscious strikes. *Id.* 85

---

reason that *Batson* was a "clear break" with past precedent. *Allen*, 106 S.Ct. at 2880. *Griffith v. Kentucky*, however, discarded the "clear break" doctrine in deciding that *Batson* should be applied retroactively to convictions that were still on direct appeal at the time *Batson* was announced. *Griffith v. Kentucky*, — U.S. —, 107 S.Ct. 708, 714, 93 L.Ed.2d 649 (1987). Thus, *Griffith* casts some doubt on the continued validity of *Allen*'s reasoning. Nevertheless, *Griffith* carefully limited its holding to cases still on direct appeal, and avoided any suggestion that *Allen*'s holding—concerning cases on collateral review—should be changed. *See id.* at 710 (stating that *Griffith* "consider[s] whether [*Batson*] is applicable to litigation pending on direct state

or federal review or not yet final when *Batson* was decided"); *cf. id.* at 716 (Powell, J., concurring) ("As the cases we decide today involve only the retroactivity of decisions pending on direct review, it was not necessary for the Court to express an opinion with respect to habeas corpus petitions."). As a result, *Allen*'s holding remains good law and prevents Procter from raising a *Batson* objection.

5. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Washington*, 104 S.Ct. at 2069.

S.Ct. at 837. Procter does not argue that he can meet the *Swain* standard.

■ Second, there is no reason to believe in this case that the *Sandstrom* instruction caused the jury to return a verdict that it otherwise would not have returned. The record contains overwhelming evidence of Procter's intent in all the crimes charged.[6] *Cf. Washington*, 104 S.Ct. at 2069 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Furthermore, the fact that the jury singled out one count of attempted first degree murder and returned instead a verdict of a lesser included offense indicates that the jury made an independent examination of the evidence in each count.

■ Last, although it is true that Procter's trial counsel made a brief closing argument, Procter fails to identify any particular line of argumentation that might have changed the outcome of the case. The counsel for Willie Young, Procter's co-defendant, made a much more extensive closing argument and yet Young received the same verdict and sentence as Procter.

In conclusion, we think there is less than a "reasonable probability" that the claimed errors of Procter's trial counsel affected the outcome of the case. As a result, Procter is not entitled to relief on the ground of ineffective assistance of counsel.

### IV.

Procter's fourth argument is that the joinder of charges of robbery and attempted murder made the trial fundamentally unfair. Whether to grant a motion to sever is within the discretion of the trial court; a court is required to sever "only in cases of compelling prejudice." *United States v. McIntosh*, 655 F.2d 80, 84 (5th Cir. Unit A 1981).[7] Further, "[t]he burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed by a reviewing court." *United States v. Abshire*, 471 F.2d 116, 118 (5th Cir.1972); *see also Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir.1986).

Procter argues that he was prejudiced because the jury was confused by the multiplicity of charges against him. He asserts that "[i]t is sophistry to suggest that the numerous charges of attempted murder and the armed robbery charge could be separated in the minds of the jurors to ensure the petitioner a fair trial." In support of this argument, Procter cites *Panzavecchia v. Wainwright*, 658 F.2d 337 (5th Cir. Unit B 1981). The defendant in that case had been charged in Florida state court with first degree murder and the unlawful possession of a firearm by a convicted felon. His habeas corpus action in federal district court alleged that the refusal of the trial judge to sever the two charges violated his constitutional right to a fair trial. Unit B of the Fifth Circuit (later to become the Eleventh Circuit) agreed, holding that the failure to sever prejudiced the defendant's cause by allowing the admission of the prior conviction—which was proper in the possession charge—before the jury that also decided the murder charge. As a result, the trial was rendered "fundamentally unfair" and thus violative of due process. *Id.* at 340.

■ The prejudice in *Panzavecchia* of the introduction of a prior felony conviction, however, was obvious and severe. Procter, by contrast, can raise only the

---

6. In the case of the robbery charge, several store clerks testified that Procter drew a pistol, ordered them to put the store's money in a bag, and afterwards told them to go to a corner of the store and not to "press any buzzers or anything." In the case of the attempted murder charges, six officers from the city of Houma and the parish of Terrebone testified that, during the chase, Procter pointed a pistol at them and at other officers and fired. Although no policeman was hit, there was evidence that a bullet from Procter's gun struck a police car.

7. Although *McIntosh* was a direct appeal from a conviction in federal district court, not a habeas corpus action because of conviction in state court, no more stringent standard of review applies here. "This is because the federal courts could not constitutionally engage in improper and prejudicial joinder any more than state courts could." *Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir.1986).

speculative possibility that his jury was confused by the numerous charges. Furthermore, even that possibility is negated by the fact that the jury in his case singled out one of the counts of attempted first degree murder and convicted him instead of attempted second degree murder. As a result, we cannot conclude that the refusal of the original trial judge to sever the charges rendered Procter's trial fundamentally unfair.

## V.

Procter's final argument is that the evidence was insufficient to establish his criminal intent in the charges of attempted murder. He asserts that the shots fired at the officers during the chase after the robbery "could have been fired in the air to scare the pursuers." Under *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979), Procter is entitled to relief on this claim only if we find that, "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." [8]

■ Our examination of the record, however, reveals ample evidence to support the jury's verdict. For example, Captain Wilfred Authement, a policeman involved in the chase, testified as follows:

Q  ... Which of the two passengers in the car actually fired the two shots at you, the driver or the passenger?

A  The passenger.

Q  Were these shots fired at you?

A  Yes sir. Directly at me.

Q  [W]as he looking in your direction?

A  Yes sir. So was the weapon.

. . . .

Q  Could you see the flash from the discharge of the weapon?

A  Yes sir.

Officer Orville Callahan testified similarly:

Q  All right, tell us what happened when you encountered this Automobile coming at you?

A  This vehicle came towards us and, uh, the passenger leaned out the window and shot two shots at us.

. . . .

Q  Was there any doubt in your mind that he was shooting at your vehicle or at you?

A  No sir.

Other police officers, including Roy LeBeouf, Johnny Mann, Larry Pontiff, and John Price, also testified that Procter fired shots at the pursuing police cars. This evidence, combined with evidence demonstrating Procter's motive to avoid arrest, amply justified the jury's implicit finding that Procter possessed the intent to kill or to do great bodily harm, as required for conviction of attempted first degree murder under Louisiana law. *See Tyler v. Phelps,* 643 F.2d 1095, 1102 (5th Cir.1981) (Louisiana habeas corpus case) (holding that evidence that the defendant fired into a crowd of people was sufficient for a rational fact finder to conclude that the defendant possessed an intent to kill or to do great bodily harm).

■ Procter also contests the sufficiency of evidence of intent in the conviction of attempted second degree murder of Detective Finane and the conviction of attempted first degree murder of Deputy Ledet. In the case of Detective Finane, there was evidence that Young's car directly struck a police car at the second roadblock and that Finane, standing near the police car, had been visible to Young. In the case of Deputy Ledet, there was evidence that, although Young's car was damaged by the impact at the third roadblock, it was under control when it hit Deputy Ledet. Although this evidence is not conclusive, it is sufficient to prevent us from holding that no reasonable juror could find that Young (and, therefore, Procter by implication) had the intent to kill or to do great bodily harm.

## VI.

Because we find no merit in the claims raised by Procter, the decision of the dis-

---

**8.** *Jackson,* although decided after Procter's trial, announced a new standard for collateral review of evidence sufficiency claims. It therefore ap-
plies retroactively. *Holloway v. McElroy,* 632 F.2d 605, 637 (5th Cir.1980).

**1258**

trict court dismissing the petition in habeas corpus is

AFFIRMED.