We will therefore affirm the judgment of the district court.

Each side to bear its own costs.

**Frank Earl SENK, Appellant**

v.

**Charles H. ZIMMERMAN, Superintendent and Leroy Zimmerman, Attorney General of the State of Pennsylvania.**

**No. 88–5794.**

United States Court of Appeals, Third Circuit.

Argued June 29, 1989.

Decided Sept. 29, 1989.

Rehearing and Rehearing In Banc Denied Oct. 26, 1989.

---

**12.** We do not decide whether the surcharge is dischargeable under Chapter 13. *See* 11 U.S.C. § 1328(a); *In re Christensen,* 95 B.R. 886 (Bankr.D.N.J.1988); *In re Bill,* 90 B.R. 651 (Bankr.D.N.J.1988).

**13.** We would have addressed these contentions only if we had concluded that the Merit Rating Plan surcharges were dischargeable in Chapter 7 and that New Jersey's practice of collecting the Merit Rating Plan surcharges conflicted with the federal Bankruptcy Code.

D. Toni Byrd (argued), Federal Public Defender's Office, Harrisburg, Pa., Melinda C. Ghilardi, Federal Public Defender's Office, Scranton, Pa., for appellant.

Andrea F. McKenna (argued), Office of Atty. Gen., Harrisburg, Pa., for appellees.

Before MANSMANN, SCIRICA and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

Frank Earl Senk appeals the denial of his petition for writ of habeas corpus. The petition alleges that Senk was denied his sixth amendment right to effective assistance of counsel by virtue of his lawyer's failure to pursue, in post-trial motions and on appeal, a challenge to the trial court's charge on first degree murder, which Senk alleges contained an impermissible mandatory presumption on the element of intent. The district court held that because the judicial decisions that arguably render unconstitutional the jury instruction on intent were not decided until many years after Senk's trial, his counsel's failure to pursue

the claim did not rise to the level of ineffective assistance. We will affirm.

### I.

On April 5, 1962, Senk was convicted of first degree murder in the Court of Common Pleas of Columbia County, Pennsylvania. In the jury charge, the trial court gave the following instruction:

[I]n all cases of malicious killing, if no intention to kill can be inferred or collected from the circumstances, then the verdict would be guilty of murder of the second degree.

Our courts have held that the intentional, unlawful and fatal use of a deadly weapon upon a vital part of the body gives rise to a presumption of fact that ma[l]ice and intention to kill exists. This would likewise apply to repeated blows, or a severe blow upon a vita[l] part of the body. This is a presumption of fact based upon common knowledge that such conduct is reasonably likely to cause death. Every person is presumed to intend the natural and probable consequences of his act or acts. Therefore, if one does an act, the consequences of which are almost certain to cause death, there would be a presumption that that was what he intended to do. Being a presumption of fact, it may be rebutted only by other circumstances in the case. This is solely a jury question.

At the conclusion of the court's charge, trial counsel made the following objection:

And now, April 5th, counsel for the defendant respectfully excepts to the Charge in general, and specifically, to that part of the Charge wherein the Court stated in substance that the jury could presume from the use of a deadly weapon that the defendant must have known that his act was likely to cause death, and knowing this, he must be presumed to intend the death which was the probable and ordinary consequence of such an act.

Trial counsel did not, however, pursue this claim in post-verdict motions or on direct

appeal.[1] This claim was also ignored in the course of two post-conviction petitions and two federal petitions for writ of habeas corpus.[2] Trial counsel filed Senk's first post-conviction petition. In the subsequent collateral proceedings, Senk pursued his claims either *pro se* or with the assistance of three different attorneys.

For the first time, in April, 1983, in his third petition under the Pennsylvania Post Conviction Hearing Act, 42 Pa.Cons.Stat. Ann. § 9541 *et seq.* (1982), Senk alleged that he received ineffective assistance of counsel at trial and on appeal because counsel failed to challenge the jury instruction on intent. The Court of Common Pleas' denial of his petition was affirmed without opinion by the Pennsylvania Superior Court. *Commonwealth v. Senk,* 341 Pa.Super. 619, 491 A.2d 921 (1985). The Pennsylvania Supreme Court denied Senk's Petition for Allocatur. *Allocatur docketed,* No. 351 (Pa.1985), *Allocatur denied,* Dec. 31, 1986. Thereafter, Senk filed his third petition for writ of habeas corpus, claiming he received ineffective assistance of counsel because his lawyer failed to pursue a challenge to the constitutionality of the jury instruction on intent. On August 18, 1988, the United States Magistrate recommended that Senk's petition be denied, concluding that defense counsel's performance was not ineffective, as it did not fall below the objective standard of reasonableness set forth in *Strickland v. Wash-*

*ington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The district court adopted the magistrate's report and dismissed Senk's petition. In October, 1988, Senk filed this appeal.[3]

## II.

Senk claims that his trial counsel and all subsequent counsel were ineffective for failing to pursue a merited claim, i.e., the unconstitutionality of the jury instruction on intent. Citing *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), both decided at least seventeen years after his trial, Senk contends that the jury instruction was unconstitutional because a reasonable jury could have viewed the instruction as including either a "mandatory conclusive presumption" or a "mandatory rebuttable presumption" as to his intent to kill.

In *Sandstrom,* the defendant argued at his state trial that his personality disorder, aggravated by alcohol consumption, prevented him from forming the requisite intent for "deliberate homicide." The trial court instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." The Supreme Court, granting certiorari "to decide the important question of the in-

---

1. Generally, only claims argued in post-verdict motions are preserved for appeal under Pennsylvania law. *See* Pa.R.Crim.P. 1123(a)(Purdon Supp.1988).

2. The history of appellate litigation of Senk's claims can be summarized as follows. On direct appeal, the Pennsylvania Supreme Court affirmed Senk's first degree murder conviction and sentence of death. 412 Pa. 184, 194 A.2d 221 (1963). The United States Supreme Court granted certiorari from the Pennsylvania Supreme Court's affirmance of conviction, however, and remanded for further proceedings on the voluntariness of Senk's confession in accordance with *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). *Senk v. Pennsylvania,* 378 U.S. 562, 84 S.Ct. 1928, 12 L.Ed.2d 1039 (1964). This issue was litigated in the state courts and Senk's confession was ultimately found to be voluntary. 423 Pa. 129, 131, 223 A.2d 97 (1966), *cert. denied,* 387 U.S. 914, 87

S.Ct. 1694, 18 L.Ed.2d 638 (1967). *See also United States ex rel. Senk v. Russell,* 396 F.2d 445 (3d Cir.1968) (affirming dismissal of Senk's first petition for habeas corpus on grounds that Senk had failed to exhaust state remedies). Thereafter, this court affirmed the denial of Senk's second petition for writ of habeas corpus. *United States ex rel. Senk v. Brierley,* 511 F.2d 1396 (3d Cir.), *cert. denied,* 423 U.S. 843, 96 S.Ct. 77, 46 L.Ed.2d 63 (1975). Senk also filed two petitions under Pennsylvania's prior Post Conviction Hearing Act, 19 Pa.Const.Stat.Ann. §§ 1180–1 to 1180–4 (repealed by P.L. 417, No. 122, § 3 (1982)), the first of which resulted in the commutation of his death sentence to life imprisonment. *Commonwealth v. Senk,* 449 Pa. 626, 296 A.2d 526 (1972); *Commonwealth v. Senk,* 496 Pa. 630, 437 A.2d 1218 (1981).

3. This court appointed a federal public defender from the Middle District of Pennsylvania to represent Senk in this appeal.

struction's constitutionality," 442 U.S. at 514, 99 S.Ct. at 2454, ruled that both a mandatory conclusive (i.e., irrebuttable) presumption, which requires the jury to find intent, and a mandatory rebuttable presumption, which requires the jury to find intent unless the defendant offers evidence to the contrary, violate the Due Process Clause of the Fourteenth Amendment by relieving the prosecution of the burden of proving every element of the crime. *See Sandstrom*, 442 U.S. at 521–24, 99 S.Ct. at 2457–59. While *Sandstrom* suggested that a trial court could constitutionally instruct the jury to draw "permissive inferences" from defendant's acts, 442 U.S. at 519, 99 S.Ct. at 2456, in *Francis v. Franklin*, the Court made explicit that a "permissive inference" does not violate the Due Process Clause, unless the suggested conclusion is "not one that reason and common sense justify in light of the proven facts," 471 U.S. at 315, 105 S.Ct. at 1971.

In Senk's case, the jury was informed that the presumption on intent "may be rebutted ... by other circumstances in the case," and that the question of intent is "solely a jury question." The instruction, therefore, did not create a "conclusive mandatory presumption." Senk also argues, however, that the instruction created a "mandatory rebuttable presumption." In contrast, the Commonwealth maintains that the instruction created a "permissive inference" that did not impermissibly shift the burden of proof to the defendant.

Senk claims that his sixth amendment rights to effective assistance of counsel at trial, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, and in his first appeal as of right, *Evitts v. Lucey*, 469 U.S. 387,

105 S.Ct. 830, 83 L.Ed.2d 821 (1985), were violated.[4] Thus, Senk's contention that he is entitled to relief only indirectly implicates the *Sandstrom* and *Francis* decisions, as we are concerned with his attorney's performance and not simply whether the *Sandstrom–Francis* rule was violated. *See Government of the Virgin Islands v. Forte*, 865 F.2d 59, 63 (3d Cir.1989).[5] We will therefore assume *arguendo* that the instruction on intent was a mandatory rebuttable presumption, not a permissive inference, and evaluate the effectiveness of counsels' performance in light of the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052. Moreover, while *Strickland* itself concerned the sufficiency of trial counsel, this court has applied the same standard when measuring the performance of both trial and appellate counsel. *See Diggs v. Owens*, 833 F.2d 439, 444–45 (3d Cir.1987), *cert. denied,* ⸺ U.S. ⸺, 108 S.Ct. 1277, 99 L.Ed.2d 488 (1988).

In *Strickland*, the Supreme Court held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064; *McNeil v. Cuyler*, 782 F.2d 443, 447–49 (3d Cir.), *cert. denied*, 479 U.S. 1010, 107 S.Ct. 654, 93 L.Ed.2d 709 (1986). Thus, a defendant claiming ineffective assistance of counsel must show that counsel's performance was "deficient," and that this deficiency deprived defendant of a trial "whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

**4.** Senk also claims that each of his subsequent attorneys were ineffective for their failure to raise this sixth amendment claim in his state and federal post-conviction petitions. Our conclusion that neither trial counsel nor first appellate counsel was ineffective obviates the need to evaluate the performance of subsequent counsel. *See Tillett v. Freeman*, 868 F.2d 106 (3d Cir.1989) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987)).

**5.** Senk has argued neither to this court nor to the Pennsylvania courts that *Sandstrom*, as a

newly-announced constitutional rule, should be applied retroactively to remedy a due process violation at trial. Therefore, we do not have occasion to address this issue. *See Dooley v. Petsock*, 816 F.2d 885, 889 n. 3 (3d Cir.) (where habeas applicant raised only sixth amendment ineffective assistance claim, appeals court did not consider an arguably meritorious due process argument because such a claim had not been raised in the Pennsylvania courts and therefore remained unexhausted, nor had it been raised in the federal habeas petition), *cert. denied*, 484 U.S. 863, 108 S.Ct. 182, 98 L.Ed.2d 135 (1987).

To demonstrate that counsel's performance was deficient, defendant must show that "counsel's representation fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064, based on the "facts of the particular case, viewed as of the time of counsel's conduct," *id.* at 690, 104 S.Ct. at 2066. Moreover, the Court admonished that our scrutiny of counsel's performance must be "highly deferential." *Id.* at 689, 104 S.Ct. at 2065. The Court's cautionary words regarding the twenty-twenty vision afforded by hindsight prove particularly applicable to this case:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065 (citations omitted).

■ The most formidable obstacle that Senk faces in prevailing on his ineffective assistance claim is the fact that the *Sandstrom* decision was decided seventeen years after his trial in Columbia County. Consequently, Senk contends that the *Sandstrom* and *Francis* decisions "merely represent an application of the principle set forth" in *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), a case decided ten years before Senk's trial. Senk claims that *Sandstrom* relied heavily on *Morissette* for the proposition that the instruction in question violated the Constitution. To further bolster this claim, Senk argues that after *Morissette* and before *Sandstrom,* state courts and federal courts of appeals were invalidating criminal convictions based on instructions on intent "similar to the instruction given in *Morissette* and in Senk's case." Finally, Senk submits that trial counsel's contemporaneous objection to the instruction in the trial court demonstrates that he recognized the infirmity in the jury instruction and thus acted unreasonably in failing to pursue the claim.

In response, the Commonwealth disputes Senk's characterization of *Morissette* as the seminal case setting forth the rules on the validity of this kind of jury instruction. Further, the Commonwealth observes that during Senk's trial and direct appeal, the United States Supreme Court had only begun to make the guaranties of the Bill of Rights obligatory upon the states through the due process clause of the Fourteenth Amendment, and therefore those accused of crimes in state courts had not "grown accustomed" to looking to the Federal Constitution as a guarantor of their rights. Therefore, the Commonwealth emphasizes that as a matter of state law, the validity of the intent instruction given at Senk's trial, i.e., that a person intends the natural consequences of his acts and that an intent to kill may be presumed from the application of a deadly weapon to a vital body part, was "a matter of long-standing precedent," traceable to *Commonwealth v. Drum,* 58 Pa. 9 (1868).

This court has observed that we will not often decide that attorneys have acted unreasonably under prevailing professional standards when they do not make an objection which could not be sustained on the basis of the existing law, as there is no general duty on the part of defense counsel to anticipate changes in the law. *Government of Virgin Islands v. Forte,* 865 F.2d at 63 (citing *Morse v. Texas,* 691 F.2d 770, 772 n. 2 (5th Cir.1982)).[6] This observation

---

6. In *Forte,* we found the "unique" circumstances

where, pre-*Batson,* an attorney who failed to

comports with the *Strickland* directive that we "reconstruct the circumstances of counsel's challenged conduct," 466 U.S. at 689, 104 S.Ct. at 2065. Therefore, we begin with a review of *Morissette* to determine whether counsel's actions were unreasonable under prevailing standards.

In *Morissette*, the defendant was charged under 18 U.S.C. § 641, which provides that "whoever embezzles, steals, purloins, or knowingly converts" government property is punishable by fine and imprisonment. The defendant admitted that he took government property, but insisted that he believed that the property had been abandoned, and therefore that he did not intend to steal it. Deciding that intent to steal was not an element of the crime charged, the trial court refused to instruct the jury on this defense. Instead, the court instructed:

> [I]t is no defense to claim that [the property] was abandoned, because it was on private property.... [I]f this young man took this property (and he says he did), that was on the property of the United States Government (he says it was) ... [then] he is guilty of the offense charged.... The question on intent is whether or not he intended to take the property. He says he did. Therefore, if you believe either side, he is guilty.

*Morissette*, 342 U.S. at 249, 72 S.Ct. at 242. The Supreme Court, granting certiorari to address questions "both fundamental and far-reaching in federal criminal law," reversed the judgment of conviction. The Court devoted most of the *Morissette* opinion to explaining that, as a matter of statutory interpretation of § 641 and in accordance with the principles of interpretation of federal criminal law, scienter was an element of the crime charged. *See id.* at 250–73, 72 S.Ct. at 243–55. In addition, the *Morissette* Court also assumed that the trial judge had conducted the trial on the theory that even if criminal intent was an element of the crime, it was an issue to be decided by the court, as a conclusive presumption of law, predicated upon the isolated act of taking rather than upon all of the circumstances. *Id.* at 273–74, 72 S.Ct. at 255. The Court held that "where intent of the accused is an ingredient of the crime charged, its existence is a question of fact which must be submitted to the jury." *Id.* at 274, 72 S.Ct. at 255. Conclusive presumptions on intent are invalid, explained the Court, because they "eliminate intent as an ingredient of the offense." *Id.* at 275, 72 S.Ct. at 256. Although construing the jury instruction as a conclusive presumption of law, the Court also noted,

> [that a] presumption which would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition. A presumption which would permit the jury to make an assumption which all of the evidence taken together does not logically establish would give to a fact an artificial and fictional effect. In either case, this presumption would conflict with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime.

*Id.* at 275, 72 S.Ct. at 256.

Despite this broad language, which the *Sandstrom* Court quoted extensively in support of its holding that a mandatory conclusive presumption on intent violates the Due Process Clause, *see Sandstrom*, 442 U.S. at 522, 99 S.Ct. at 2458, we do not believe *Morissette* is the seminal case that decided the validity of burden-shifting presumptions on intent. Although the *Morissette* Court suggested its decision rested on the "overriding presumption of innocence", the Court did not expressly invoke the Due Process Clause. In addition, as we have

---

preserve a *Batson* objection provided ineffective assistance of counsel. We rested our decision on that fact that the Supreme Court had long held that a state denies equal protection of the laws when a black is put on trial before a jury from which blacks are purposefully excluded, and that numerous *Batson*-like objections were being made at the time in other cases, including in the Virgin Islands. *Forte*, 865 F.2d at 63. We therefore concluded that "an attorney prior to *Batson* should not have been startled at the suggestion that the Supreme Court would hold the practice of prosecutors to challenge peremptorily jurors on racial grounds to be unconstitutional." *Id.*

already noted, the *Morissette* Court explicitly stated that it had granted certiorari to resolve a fundamental question of "federal criminal law." *Morissette*, 342 U.S. at 249, 72 S.Ct. at 242. Thus, Senk's counsel could reasonably have interpreted the *Morissette* decision as lacking federal constitutional significance. This interpretation appears particularly sensible in light of the Supreme Court's subsequent decision in *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), issued just six months after *Morissette*.

In *Leland*, the Court considered whether an Oregon statute violated the Due Process Clause of the Fourteenth Amendment by requiring that criminal defendants pleading insanity establish their innocence by disproving beyond a reasonable doubt that they were capable of forming the requisite mental element of the crime charged. The Court had previously held in *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895), that the accused is "entitled to an acquittal of the specific crime charged if upon all the evidence there is a reasonable doubt whether he was capable in law of committing the crime." *Id.* at 484, 16 S.Ct. at 357. The *Davis* Court explained that such a rule was necessary "in governments whose constitutions recognize the fundamental principles that are deemed essential for the protection of life and liberty." *Id.* at 488, 16 S.Ct. at 358. Despite this apparent reference to the guaranties of the Due Process Clause, the *Leland* Court affirmed the constitutionality of Oregon's burden-shifting statute, explaining that the *Davis* decision "obviously establishes no constitutional doctrine, but only the rule to be followed in federal courts," *Leland*, 343 U.S. at 797, 72 S.Ct. at 1006.

In fact, it was not until 1970—eighteen years after the *Morissette* decision and eight years after Senk's trial—that the Supreme Court emphatically specified

> [l]est there remain any doubt ..., we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of *every fact necessary* to

constitute the crime with which he is charged.

*In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970) (emphasis added). Accordingly, the *Sandstrom* Court stated that conclusive presumptions on intent relieved the State of its burden of proving beyond a reasonable doubt every fact necessary to constitute the crime charged, and thus "deprived [defendant] of his constitutional rights as explicated in *Winship*." *Sandstrom*, 442 U.S. at 523, 99 S.Ct. at 2459. *See also id.* at 521, 99 S.Ct. at 2458 ("the question before this court is whether the challenged jury instruction had the effect of relieving the State of the burden of proof enunciated in *Winship*"). Therefore, it was *In re Winship*—rather than *Morissette*—upon which the *Sandstrom* reasoning most heavily rested. *See also Procter v. Butler*, 831 F.2d 1251, 1253–54 (5th Cir.1987) (identifying *In re Winship* as the seminal pre-*Sandstrom* decision providing a sufficient basis for defense counsel to anticipate and object to burden-shifting jury instructions on intent), *cert. denied*, ― U.S. ―, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988). In sum, it would not have been unreasonable for Senk's counsel to have concluded that the *Morissette* decision provided no basis for a challenge to the constitutionality of evidentiary presumptions in jury instructions.

Furthermore, the jury instruction on intent announced to the Senk jury differed significantly from the instruction given in *Morissette*. As we noted earlier, the intent instruction that the *Morissette* jury received, as distinguished from the intent instruction in Senk's trial, established a conclusive presumption and thus completely removed the issue of intent from the jury's consideration. It is for this reason that the *Sandstrom* Court characterized the *Morissette* instruction on intent as a "conclusive presumption," 442 U.S. at 521, 99 S.Ct. at 2458, and cited *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), rather than *Morissette*, in support of its holding that a mandatory rebuttable presumption violates the constitution. *See Sandstrom*, 442 U.S. at 523–24, 99 S.Ct. at 2458–59. The *Mullaney* decision was issued twelve years after Senk was tried. Therefore, even if we

were to assume that Senk's counsel should have foreseen the constitutional significance of the *Morissette* decision, Senk's counsel could have reasonably concluded that the *Morissette* holding did not invalidate the rebuttable presumption given at his own client's trial.[7]

The several pre-*Sandstrom* decisions cited by Senk, which invalidate criminal convictions where the jury received instructions on intent similar to the instruction given in *Morissette*, do not dictate a different result. In each of these cases, the defendant was tried in federal, rather than state court, and the jury instruction created a conclusive presumption on the issue of intent, rather than a burden-shifting presumption. *See Chappell v. United States*, 270 F.2d 274, 276 (9th Cir.1959) (invalidated conviction under 18 U.S.C. § 641 where jury instructions on intent included conclusive presumption); *Bloch v. United States*, 221 F.2d 786, 788 (9th Cir.1955) (invalidated criminal conviction for federal income tax evasion where jury instruction on intent contained conclusive presumption); *Berkovitz v. United States*, 213 F.2d 468, 473 (5th Cir.1954) (invalidated criminal conviction for federal income tax evasion where jurors told they could presume intent from defendant's single act of filing a false return and not told that they must consider defendant's evidence to the contrary on intent); *Wardlaw v. United States*, 203 F.2d 884, 887 (5th Cir.1953) (conclusive presumption on intent invalidated criminal conviction for federal tax evasion). These decisions could not have put Senk's counsel on notice that the *Morissette* rule would invalidate, on due process grounds, rebuttable presumptions on intent in a state criminal trial.

In hindsight, the evolution from the broad principles in *Morissette* to the concrete rules of *Sandstrom* appears to be a textbook example of the harmonious development of the common law. The *Strick-*

*land* directive, however, mandates that we avoid these "distorting effects," by "reconstruct[ing] the circumstances of counsel's challenged conduct, and ... evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689, 104 S.Ct. at 2065. Applying this standard, we do not believe that counsel's conduct fell outside the "wide range of reasonable professional assistance," *id.*, because, without the link provided by the *In re Winship* decision, he was not able to predict that the broad principles mentioned in *Morissette* would, seventeen years later, develop into the concrete rules governing burden-shifting jury instructions set forth in *Sandstrom.*

Accordingly, we will affirm the judgment of the district court.

Costs to be taxed against appellant.

---

7. Therefore, we find Senk's citation to *Yates v. Aiken,* 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546 (1988), to be inapposite. Yates was a habeas applicant tried after *Sandstrom* had been decided but before the *Francis* decision was issued, whose jury had received a mandatory rebuttable presumption on intent. In rejecting the state attorney general's argument that Yates was not entitled to the benefit of the *Francis* decision, the United States Supreme Court held

that its decision in *Francis* was "merely an application of the principle that governed ... [the] decision in *Sandstrom,* which had been decided before petitioner's trial took place." *Yates,* 108 S.Ct. at 538. Moreover, the Court stated that it had "explicitly so held in *Francis* itself." *Id.* In contrast, *Sandstrom* involved more than a "mere application" of the *Morissette* decision.

