United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2003

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

No. 02-10913

---

YOKAMON LANEAL HEARN,

Petitioner-Appellant,

versus

JANIE COCKRELL, Director, Texas Department of Criminal Justice, Institutional Division,

Respondent-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas
(No. 3:01-CV-2551-D)

---

Before HIGGINBOTHAM, SMITH, and CLEMENT, Circuit Judges.

PER CURIAM: [*]

Petitioner Yokamon Laneal Hearn ("Hearn") seeks a Certificate of Appealability ("COA") as to four issues: (1) whether the trial court violated Hearn's right to effective assistance of counsel under the Sixth Amendment by failing to appoint his defense counsel in the manner prescribed by Texas law; (2) whether the prosecutor violated *Batson v. Kentucky*, 476 U.S. 79 (1986), by using a peremptory challenge to prevent a black male from sitting on the jury; (3) whether the trial court violated his right to be free from cruel and unusual punishment under the Eighth and Fourteenth

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

Amendments and his right to due process under the Fourteenth Amendment by refusing to instruct the jury as to Hearn's parole eligibility; and (4) whether Dallas County violated Hearn's right to an impartial jury consisting of a cross-section of the community under the Sixth and Fourteenth Amendments. Hearn's application for a COA is DENIED.

## I. FACTS AND PROCEEDINGS

On March 25, 1998, Hearn and three accomplices drove to North Dallas with several firearms. At a coin-operated car wash, Hearn saw Joseph Franklin Meziere ("Meziere") cleaning his car. With the assistance of his accomplices, Hearn abducted Meziere and stole his car. Shortly thereafter, Hearn killed Meziere by shooting him in the face.

A jury convicted Hearn of capital murder, and the Texas state court entered a judgment imposing the death penalty. The Texas Court of Criminal Appeals affirmed Hearn's conviction on direct appeal. The U.S. Supreme Court denied Hearn's petition for a writ of certiorari.

Hearn filed an application for a writ of habeas corpus in the trial court, which issued findings of fact and conclusions of law and recommended that Hearn's application be denied. The Texas Court of Criminal Appeals denied Hearn's application for state habeas corpus relief.

The federal district court entered an order appointing counsel to represent Hearn for his federal habeas corpus petition, but ultimately denied his petition. The district court also denied Hearn's subsequent petition for COA, but granted his motion to proceed in forma pauperis on appeal.

## II. STANDARD OF REVIEW

In deciding a request for a COA, we ask if a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Hearn need not "convince a judge, or, for that matter, three judges, that he . . . would prevail," but "must demonstrate that reasonable jurists

2

would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1038-40 (2003). When considering a request for a COA, "the question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 1042.

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Hearn does not argue that the performance of his trial counsel was deficient in one respect or another. Instead, Hearn asserts that the procedure by which his trial counsel was appointed was defective. In particular, the trial court did not adhere to the procedure established by Texas law for the appointment of trial counsel in death penalty cases. The question for this Court is whether the failure to follow the proper administrative procedure signifies that Hearn received ineffective assistance of counsel at trial.

Under Texas law, each administrative judge in each administrative judicial region must form a selection committee composed of himself, one or more district judges, a representative from the local bar association, and one or more practitioners who are certified by the Texas State Bar in criminal law. TEX. CODE CRIM. PROC. ANN. art. 26.052. The selection committee is responsible for adopting standards governing the qualification of attorneys for appointment to death penalty cases. *Id.* These standards must be posted in each district clerk's office in the region with a list of attorneys qualified for appointment. *Id.* Based on this list, the presiding judge of the district court in which a capital felony case is filed appoints counsel for the indigent defendant. *Id.*

Apparently, this entire procedure was ignored in Dallas County. No selection committee was ever formed, no list was created, and no appointments were made on the basis of such a list. Instead,

3

the administrative judge for the region encompassing Dallas County signed an order establishing general standards for the appointment of death penalty counsel. The order delegated the responsibility for selecting death penalty counsel to the trial courts, which were required to post their standards for appointment and list the qualifying attorneys. However, the trial court in this case never established any such standards or list.

In sum, the statutory procedure was not followed, and neither was the alternative procedure established by order of the administrative judge.

The failure of the Texas courts to follow proper administrative procedure in appointing death penalty counsel is inexplicable. However, Hearn has not provided any evidence that this error deprived him of effective assistance of counsel.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Procter v. Butler*, 831 F.2d 1251, 1255 (5th Cir. 1987) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687. By failing to provide any evidence of deficient performance by his trial counsel, Hearn fails to satisfy the first element of the *Strickland* test.

Hearn also fails to satisfy the second element of the *Strickland* test because he suffered no prejudice from the alleged procedural error. As the Supreme Court recognized, it is "virtually inevitable" that courts will commit at least some errors during the course of a trial. *Rose v. Clark*, 478 U.S. 570, 577 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986) (holding that "the Constitution entitles a criminal defendant to a fair trial, not a perfect one"). These errors are not all

4

equally significant, so it is necessary to distinguish between "trial errors" and "structural errors". *Clark*, 478 U.S. at 576-79; *Arizona v. Fulminante*, 499 U.S. 279, 307-12 (1991).

Trial errors, which may include constitutional errors, are analyzed under the harmless error standard. *Clark*, 478 U.S. at 576-77; *Fulminante*, 499 U.S. at 307-08. As long as the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are trial errors and thus subject to harmless-error analysis. *Clark*, 478 U.S. at 579.

Structural errors "affect[] the framework within which the trial proceeds." *Fulminante*, 499 U.S. at 310. Unlike trial errors, structural errors involve the violation of "basic [constitutional] protections, [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Id.* For this reason, structural errors may not be analyzed under a harmless error standard. *Id.* at 309. Examples of structural errors include the introduction of coerced confessions, the complete denial of right to counsel, and adjudication by a biased judge. *Clark*, 478 U.S. at 577-78.

Hearn had counsel and an impartial adjudicator, thus there is a strong presumption that any other errors are trial errors and thus subject to harmless-error analysis. *Clark*, 478 U.S. at 579. The procedural error alleged by Hearn does not amount to a structural error. *Id.* at 577-78; *Fulminante*, 499 U.S. at 306-07. Hearn fails to present any evidence that the procedural error had any effect on his trial or its outcome; therefore, we hold the error to be harmless. *Wright v. State*, 28 S.W.3d 526, 530-31 (Tex. Crim. App. 2000) (holding that failure of trial court to follow administrative procedure for appointment of trial counsel in death penalty cases was harmless where defendant failed to object to noncompliance at trial and failed to present any evidence that he was harmed by the

5

noncompliance).

## B. Peremptory Challenge to Juror Brown

The prosecutor used a peremptory challenge to prevent Glenn Brown ("Brown"),a black male, from sitting on the jury. Hearn challenged the use of the peremptory challenge based on *Batson v. Kentucky*, 476 U.S. 79, 89 (1986), in which the Supreme Court prohibited prosecutors from using peremptory challenges to exclude jurors from participation in the jury based on their race. The prosecutor explained that he used the peremptory challenge based on Brown's religious beliefs and not his race. Specifically, the prosecutor feared that Brown's willingness to forgive his own grandmother's murderer signified that Brown would have a "real, real tough time" imposing the death penalty on Hearn. The trial court accepted the prosecutor's reasons for peremptorily striking Brown to be race neutral.

After the defendant has made a *prima facie* showing that the prosecutor exercised a peremptory challenge on the basis of race and the prosecutor has provided a race-neutral reason for striking the juror,

> the decisive question [is] whether [the prosecutor's] race-neutral explanation [] should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.

*Hernandez v. New York*, 500 U.S. 352, 358-59, 365 (1991). For this reason, the trial court's finding of fact on this question is entitled to great deference by this Court. *Id.* at 364-65. "[I]n the absence of exceptional circumstances, we would defer to state-court factual findings, even when those findings relate to a constitutional issue." *Id.* at 366. Hearn offers no evidence of exceptional circumstances, thus this Court must defer to the judgment of the trial court.

6

## C. Instruction on Hearn's Parole Eligibility

Before the start of trial, Hearn asked the trial court to include the following jury instruction:

> Regarding the law of parole, you are instructed that a prisoner under sentence of death is not eligible for parole. A prisoner serving a life sentence for a capital felony is not eligible for release on parole until the actual calendar time the prisoner has served without consideration of good conduct time, equals 40 calendar years.

Prior to closing argument, the trial court denied Hearn's request to include this instruction in the jury charge.

According to Hearn, the trial court should have informed the jury, which had to consider whether he would pose a future danger to society, that he would not be eligible for parole for 40 years if he was not sentenced to death. In support of his argument, Hearn relies primarily on *Simmons v. South Carolina*, 512 U.S. 154, 163-64 (1994), in which the Supreme Court held that

> [i]n assessing future dangerousness, the actual duration of the defendant's prison sentence is indisputably relevant. Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not. Indeed, there may be no greater assurance of a defendant's future nondangerousness to the public than the fact that he never will be released on parole. The trial court's refusal to apprise the jury of information so crucial to its sentencing determination . . . cannot be reconciled with our well-established precedents interpreting the Due Process Clause.

In *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000), a four-justice plurality of the Supreme Court held that "[t]he parole-ineligibility instruction is required only when, assuming the jury fixes the sentence at life, the defendant is ineligible for parole under state law." *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000). In a concurring opinion, Justice O'Connor wrote: "*Simmons* entitles the defendant to inform the capital sentencing jury that he is parole ineligible where the only alternative sentence to death is life without the possibility of parole." *Id.* at 181 (O'Connor, J., concurring). Taken together, the plurality and concurring opinions in *Ramdass* indicate that the *Simmons* parole

7

eligibility instruction is only required when the only alternative sentence to the death penalty is life without parole. As Hearn concedes, Texas does not provide for the possibility of life without parole. If he had not been sentenced to death, Hearn would have been eligible for parole in 40 years. Therefore, the trial court did not err in denying the jury instruction requested by Hearn, for he had no right to a *Simmons* instruction.

Alternatively, to hold that Hearn was entitled to a parole eligibility jury instruction, this Court would have to announce a new rule of constitutional procedure. *Id.* at 166, 181. Under *Teague v. Lane*, 489 U.S. 288, 309-10 (1989), this Court may not announce new rules of constitutional procedure on collateral review. Therefore, Hearn's claim as to the parole eligibility jury instruction is *Teague*-barred.

### D. Representative Venire

Hearn argues that his constitutional rights to an impartial jury and to a venire consisting of a representative cross-section of the community were violated by the Dallas County jury system. Apparently, Dallas County pays jurors only five dollars per day, which results in Hispanics, persons 18 to 34 years old, and persons from households with incomes under $35,000 being underrepresented in venires and juries. Hearn cites *Taylor v. Louisiana* in support of his argument. 419 U.S. 522, 538 (1975) (holding that the "venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof").

Hearn's argument fails on its face. As the Supreme Court noted, the issue in *Taylor* was the constitutionality of "Art. VII, § 41, of the Louisiana Constitution, and Art. 402 of the Louisiana Code of Criminal Procedure[, which] provided that a woman should not be selected for jury service unless she had previously filed a written declaration of her desire to be subject to jury service." *Id.* at 523.

There is no comparable constitutional or legal provision in this case which explicitly provides for the exclusion of a distinctive group. Instead, Hearn complains that the low daily fee paid to jurors by Dallas County results in the underrepresentation of three groups, which are distinguished based on their ethnicity, age, and income.

The Supreme Court held that "venires from which juries are drawn must not *systematically* exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* at 538 (emphasis added). In *Taylor*, there was clear evidence of a systematic effort to exclude women, but there is no such evidence here. Louisiana explicitly designed its system to exclude women, but the underrepresentation Hearn complains of is an indirect consequence of the low daily fee paid to jurors in Dallas County.

Defendants are not entitled to a jury, jury wheel, pool of names, panel, or venire of any particular composition, and there is no requirement that those bodies "mirror the community and reflect the various distinctive groups in the population." *Id.* For this reason, the underrepresentation alleged by Hearn is not unconstitutional.

## IV. CONCLUSION

Hearn has not made a substantial showing of the denial of a constitutional right. Although he does not need to show he would prevail, Hearn must demonstrate that reasonable jurists would find his constitutional claims debatable. The constitutional claims presented by Hearn are not debatable. Therefore, Hearn's application for a COA is DENIED.