Travis VEAL

v.

Robert MYERS, et al.

No. CIV. A. 98–3993.

United States District Court,
E.D. Pennsylvania.

Dec. 29, 2000.

Robert E. Welsh, Jr., Lisa A. Mathewson, Welsh & Recker, Philadelphia, PA, for plaintiff.

Donna G. Zuber, Philadelphia, PA, for defendant.

### EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

Before me is Petitioner Travis Veal's ("Veal") *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The procedural history material to this explanation is that on April 21, 1989, Veal was convicted by a jury in the Court of Common Pleas in Philadelphia of second degree murder, robbery, conspiracy and possessing an instrument of crime. *See* Report and Recommendation ("R & R") at 2. The charges were filed as a result of a robbery of Dave's Grocery Store, during

which Veal and an accomplice, Leonard Ravenell, robbed the store and shot the owner in the head. Veal was sentenced to life imprisonment. *See id.* at 2–3. Veal did not file a direct appeal to the Superior Court. *See id.* at 3. On December 18, 1990, Veal filed a *pro se* petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, *et seq.*[1] *See id.* On August 10, 1995, pursuant to Veal's PCRA petition, the Honorable Joseph I. Papalini reinstated Veal's appellate rights *nunc pro tunc. See id.* at 4. Thereafter, Veal appealed to the Pennsylvania Superior Court. On November 27, 1996, the Superior Court affirmed the judgment of sentence. *See id.* Veal failed to petition for *allocatur* following the Superior Court ruling.

On or about January 20, 1997, however, Veal filed a motion for leave to file a petition for allowance of appeal *nunc pro tunc* of the Superior Court ruling to the Pennsylvania Supreme Court.[2] On August 15, 1997, the Honorable Carolyn E. Temin of the Court of Common Pleas of Philadelphia County granted Veal's request to proceed with a *nunc pro tunc* petition for allowance of appeal to the Pennsylvania Supreme Court.[3] On February 23, 1998, Veal's request for *allocatur* was denied by the Pennsylvania Supreme Court without comment. On July 31, 1998, Veal filed this habeas corpus petition. On October 23, 1998, Magistrate Judge Rapoport issued a Report and Recommendation that the petition for writ of habeas corpus be denied. On December 22, 1999, I granted Veal's request for appointment of counsel.[4]

Magistrate Judge Rapoport recommended denying Veal's petition because Veal "presented the same claims he raised here to the Superior Court. However, he did not seek discretionary review in the Supreme Court in a timely manner. Under the doctrine of *Beaty v. Patton*, 700 F.2d 110 (3rd Cir.1983), the petitioner's failure to seek *allocatur* timely constitutes state procedural default that prevents federal habeas corpus review." R & R at 5. Therefore, Magistrate Judge Rapoport concluded that Veal's procedural default bars federal habeas review. *See id.* at 7.[5]

1. The PCRA "provides an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S.A.§ 9542.

2. The Commonwealth asserts that Veal "did not serve the Commonwealth with a copy of this motion; the Commonwealth was completely unaware of it until petitioner's counsel attached it to his late petition for allowance of appeal." Resp. to Am. Objections at 2. Additionally, the Commonwealth also alleges that while Veal "claims that he filed his extension motion in January of 1997; respondents do not know if this is true, because they were never served with a copy, and indeed still do not have a copy of this motion." *Id.* at 6. In his reply brief, Veal attaches a copy of the relevant motion and cover letter. *See* Reply at Ex. A. Veal notes that "the cover letter shows that ... he sent the Motion to Ms. Carolyn Friend, Esquire, of the Prison Liaison Unit of the Philadelphia Court of Common Pleas B and that he placed it in the institutional mailbox on January 20, 1997." *Id.* at 6. Furthermore, there is a copy of Veal's motion in the state court record.

3. Judge Temin served as "Calendar Judge" for all homicide cases in the Court of Common Pleas in 1997. As Calendar Judge, Judge Tenim received all of the homicide cases to be distributed to other judges. She also heard all preliminary or other matters in the cases that could be decided without an extensive hearing. (Information received by phone from Judge Temin's Chambers.)

4. Robert E. Welsh, Jr., in conjunction with Lisa A. Mathewson, was appointed counsel.

5. At the time of issuing the Report and Recommendation, Magistrate Judge Rapoport was unaware of Judge Temin's August 15, 1997 Order ("Judge Temin's Order") granting Veal's request to proceed with a *nunc pro tunc* petition for allowance of appeal to the Pennsylvania Supreme Court.

On August 13, 1999, I ordered the state court records for this case. Therefore, it appears that Judge Rapoport did not have the state court records when he issued his Report and Recommendation. The state court records do not include a copy of Judge Temin's order, but do include a copy of Veal's motion to proceed *nunc pro tunc* with a petition for *allocatur* before the Supreme Court. Additionally, there is an April 4, 1997 order,

Based upon Judge Tenim's order, petitioner Veal contends that he did not procedurally default on his claims. In his Amended Objections to the Report and Recommendation, he argues that he followed proper state procedure at the time, when he petitioned the Court of Common Pleas for *nunc pro tunc* relief. The Commonwealth asserts that Judge Temin's Order was unlawful, and therefore, Veal failed to file a timely petition for *allocatur* with the Pennsylvania Supreme Court. Veal counters that Judge Temin's Order was valid and, regardless of the validity of Judge Temin's Order, a federal court should refrain from evaluating an issue that no Pennsylvania court has addressed. On October 30, 2000, I heard oral argument on this issue.

Chief Judge Becker, in a recent Third Circuit opinion in *Hull v. Kyler*, 190 F.3d 88 (1999), sets forth the controlling law on whether or not Veal procedurally defaulted his claims.[6] The petitioner in *Hull* followed a procedure that is the same for all relevant purposes as the procedure followed by Veal. Hull was convicted in state court. He challenged his conviction on direct appeal, which was ultimately denied by the Pennsylvania Supreme Court. Hull filed an initial action for state post-conviction relief under the PCRA. He appealed

the denial of his PCRA action to the Superior Court and the Superior court affirmed the denial. Hull's counsel failed to file a timely petition for *allocatur* in the Pennsylvania Supreme Court challenging the Superior Court's denial of post-conviction relief. Thereafter, Hull filed an initial action for federal habeas relief. This action was ultimately dismissed without prejudice by the district court, pursuant to an order of remand from the Third Circuit (Hull II).[7] In Hull II, the Third Circuit recognized Hull's failure to file a timely petition for *allocatur* to the Pennsylvania Supreme Court as a procedural default. The Third Circuit ordered the district court to dismiss to afford Hull an opportunity to obtain a waiver of his procedural default, by petitioning for allowance of appeal *nunc pro tunc* on the grounds of ineffective assistance of postconviction counsel for failure to file a timely petition for *allocatur*. By dismissing without prejudice, the Third Circuit deferred to the state courts to determine whether this ineffective assistance claim is valid under state law such the state should waive Hull's procedural default.

At this point, Hull sought leave to file a petition for *allocatur nunc pro tunc* from the Court of Common Pleas. The Court of Common Pleas granted his request.[8] Pur-

signed by Judge Temin, stating "upon consideration of defendant's *pro se* Motion for Leave to File Petition for Allowance of Appeal *Nunc Pro Tunc,* it is hereby, ordered and decreed, that counsel be appointed on the motion. Counsel is ordered to appear before the Honorable Carolyn Engel Temin in Courtroom 604, Criminal Justice Center at 9:00 a.m. on June 6, 1996." I assume this order is meant to read that counsel shall appear on June 6, 1997. Additionally, there is another document in the state court records indicating that John B. Elbert, Esq. is appointed to file a petition with the Supreme Court (signed by Judge Temin). Neither counsel mention these documents.

The Commonwealth attaches a letter to its reply brief to the Supreme Court of Pennsylvania, dated November 20, 1997. In the November 20, 1997 letter, the Commonwealth asserts that Judge Temin's August 15, 1997 Order is invalid and therefore, the defendant's

petition should be deemed untimely (or deemed unworthy of review). This November 20, 1997 letter indicates that the Commonwealth was aware of Judge Temin's order but did not mention this fact in their reply to Veal's habeas corpus petition.

6. *Hull v. Kyler* was brought to my attention by the Commonwealth at Oral Argument.

7. In *Hull v. Kyler*, 190 F.3d 88 (1999), the court refers to its earlier opinion accompanying the order of remand as "Hull II". Hull I is not discussed here because it is not relevant to the issue at hand.

8. The order of the Court of Common Pleas, dated August 30, 1995, states:

"[D]efendant is granted leave to file a petition for appeal *nunc pro tunc* to the Supreme Court of Pennsylvania from the deci-

suant to the order issued by the Court of Common Pleas, Hull then filed a petition for *allocatur nunc pro tunc.* His petition was denied by the Pennsylvania Supreme Court without comment. Hull then filed a second petition for federal habeas relief. The district court denied his habeas petition on the merits. Reversing the district court=s denial of Hull's second petition for habeas relief, in *Hull v. Kyler,* 190 F.3d 88 (1999), in its final determination in this matter, the Third Circuit reached the question of whether the order issued by the Court of Common Pleas, granting *nunc pro tunc* relief to file a petition for *allocatur,* constituted a waiver of procedural default necessary to reach the merits of Hull's federal habeas action.

The Third Circuit found that the grant of relief by the Court of Common Pleas did constitute waiver by the state of his procedural default that arose when he failed to timely appeal the Superior Court's denial of post-conviction relief. *See* 190 F.3d at 98. The court further stated that "the state supreme court's unexplained denial of Hull's most recent *nunc pro tunc* petition [shall be read as] a determination on the merits" of his PCRA claim by the Pennsylvania Supreme Court. *Id.* at 99 (citations omitted). "If the Commonwealth wished to avoid the state court's waiver of the procedural default, it was incumbent upon it to appeal the Court of Common Pleas' order." *Id.* at 98. In *Hull,* the Commonwealth did initially appeal this order to the Superior Court, but later the Superior Court dismissed the appeal when the Commonwealth failed to file its brief. Thus, by failing to follow through on an appeal of the order, the Commonwealth gave up its only opportuni-

ty to contest the state waiver of Hull's procedural default. "The Commonwealth may not now, [in the federal habeas action], allege error in the trial court's ... ruling." *Id.* at 101 n. 4.

■ The Third Circuit acknowledged in *Hull* that when it had ordered the district court in Hull II to dismiss Hull's first habeas petition to allow him to obtain a waiver of his procedural default, the court envisioned that Hull would file a petition for leave to file a petition for *allocatur nunc pro tunc* with the Pennsylvania Supreme Court. Such a procedure would have given the Pennsylvania Supreme Court an opportunity to rule directly on the right to obtain such relief based on counsel's failure to timely appeal. The court did not envision a scenario in which "Hull's waiver claim would never get past the state trial court." *Id.* at 99.[9] However, "Hull only needed a waiver from the Pennsylvania Courts, not necessarily for the state's highest court." *Id.* (citations omitted).

■ When the Pennsylvania Supreme Court denied Hull's petition for *allocatur* without comment, it left the trial court's order, and thus the state waiver, standing. If Hull had filed a petition for *allocatur nunc pro tunc* without the order from the Court of Common Pleas, the state supreme court's denial without comment would have been properly read as a denial based on procedural default. *See id.* at 95 (reversing its earlier opinion based on two recent Supreme Court cases, *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) and *Ylst v. Nunnemaker,* 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706(1991)). With the Court of

sion of the Superior Court of Pennsylvania dated September 30, 1998, conditioned upon the relief granted herein not being inconsistent with the order of the Supreme Court dated February 21, 1989."
190 F.3d at 96.

9. The court noted that:
"Because the Commonwealth failed to pursue its appeal from the state post-conviction

court's granting of a waiver of Hull's procedural default, the state supreme court never had the formal opportunity, through no fault of Hull's, to" rule simultaneously on Hull's waiver argument, his petition for allowance of appeal *nunc pro tunc,* and the merits of his underlying PCRA claim, as the court envisioned in Hull II.
190 F.3d at 99.

Common Pleas order on the record, however, the Third Circuit reasoned that the Supreme Court could have reversed the order "by either dismissing (rather than denying) Hull's second petition, or by clearly stating that Hull's petition remained untimely and that his procedural default remained effective." *Id.*[10] The Third Circuit concluded:

"We are of course bound by Hull II but, at all events, agree that on these facts when the Pennsylvania courts granted Hull the right to file a petition for allowance of appeal *nunc pro tunc,* the subsequent denial of that petition was on the merits."

*Id.* at 100.

The difference between the procedure in this case from that in *Hull,* is that Hull's appellate rights were reinstated by the Court of Common Pleas in a PCRA action, while Judge Tenim's order reinstated Veal's appellate rights outside of the PCRA framework. In fact, Veal had already had his appellate rights reinstated once by the PCRA court, allowing him to file for direct appeal to the Superior Court. Veal's petition to the Court of Common Pleas was not framed as a PCRA petition. The Commonwealth argues that if Veal wished to have his appellate rights reinstated based on ineffective assistance of counsel, he was required to proceed in a PCRA action, as Veal had done originally.

10. Tracing the procedural history, the court explained:
   "Once a lower state court granted Hull a waiver, and the Commonwealth failed to appeal from this order (and the state supreme court did not indicate that the waiver was improperly granted when it denied Hull's petition for allowance of appeal), Hull had done what federal law and our decision in Hull II required of him. To hold otherwise would allow states to circumvent the waiver exception to the procedural-default rule by failing to appeal from lower court decisions holding that a procedural default is waived."
   *Id.* at 99.

11. Even without such a presumption as to the intentions of the Pennsylvania Supreme Court

■ In light of *Hull,* I need not address the merits of the Commonwealth's challenge to the validity of Judge Tenim's order. Such a challenge is untimely. Regardless of when the Commonwealth learned of Veal's petition, the Commonwealth had an opportunity to appeal Judge Tenim's order once the order was issued. The Commonwealth conceded in oral argument that it could have appealed the order. *See* Tr. at 24. Instead, the Commonwealth merely asserted in its reply brief to the Pennsylvania Supreme Court that the order lacked validity. The Commonwealth gave up the opportunity to contest the validity of Veal's petition when it failed to appeal Judge Tenim's order. Under *Hull,* the Pennsylvania Supreme Court's denial of *allocatur* without comment in 1998 left Judge Tenim's order standing. Also, contrary to the Commonwealth's argument in its response to petitioner's objections to the Report and Recommendation, the Pennsylvania Supreme Court's denial is presumed to be on the merits. *See Hull,* 190 F.3d at 100.[11] Thus, the state has waived Veal's procedural default and Veal is not procedurally barred from seeking federal habeas relief. Therefore, I will remand this case to Magistrate Judge Rapoport to evaluate and address the merits of Veal's claims.

### ORDER

**AND NOW,** this day of December, 2000, I **ORDER** that:

when it denied *allocatur* in 1998, Pennsylvania case law supports a finding that Judge Tenim's order was proper because Veal followed proper state procedure under the law governing in 1997 when he petitioned the Court of Common Pleas for *nunc pro tunc* relief outside the PCRA framework. In addition, the Pennsylvania Superior Court held in *Commonwealth v. West,* 334 Pa.Super. 287, 482 A.2d 1339 (1984), that a claim of ineffective assistance for failure of counsel to file a timely petition for *allocatur* is valid under some circumstances. As Chief Judge Becker made clear in *Hull,* whether or not Veal's claim was valid is more properly determined by the state courts.

(1) the Report and Recommendation is not approved and adopted; and

(2) the petition for writ of habeas corpus is **REMANDED** to the magistrate judge for consideration of the merits of petitioner's claims consistent with this explanation.