Travis VEAL, Petitioner,

v.

Robert MYERS, et al., Respondents.

No. 98–CV–3993.

United States District Court,
E.D. Pennsylvania.

July 14, 2004.

Lisa A. Mathewson, Robert E. Welsh, Jr., Welsh & Recker, P.C., Philadelphia, PA, for Petitioner.

John W. Goldsborough, Thomas W. Dolgenos, District Attorney's Office, Assistant District Attorney, Michele S. Davidson, Layser & Freiwald, Donna G. Zucker, Philadelphia, PA, for Respondents.

## MEMORANDUM

ANITA B. BRODY, District Judge.

Travis Veal ("Veal") petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2003). For the following reasons, Veal's petition is denied.

## I. Facts and Procedural History

On April 21, 1989, Veal was convicted by a jury in the Court of Common Pleas in Philadelphia of second degree murder, robbery, conspiracy and possessing an instrument of crime. (Report and Recommendation [1] ("R & R") at 4.) The charges

---

1. Magistrate Judge Arnold C. Rapoport first filed a Report and Recommendation in this case on October 23, 1998. Magistrate Judge Rapoport filed a second Report and Recom-

were filed as a result of a robbery of Dave's Grocery Store, during which Veal and an accomplice, Leonard Ravenell ("Ravenell"), robbed the store and Ravenell shot the owner, Mr. Rodriguez, in the head. (*Id.* at 2.) At trial, Veal was represented by Attorney Thomas Moore ("Moore"). (Resp. to Second Amend. Pet. at 1 [hereinafter "Resp."].) The Commonwealth presented Ravenell as the primary Commonwealth witness against Veal at trial. (R & R at 3.) Two additional Commonwealth witnesses, Mrs. Rodriguez ("Mrs.Rodriguez") and Tracey Natal ("Natal") also testified during the trial. (*Id.*) Mrs. Rodriguez was the wife of the deceased store owner Mr. Rodriguez, and was in the store during the shooting. (*Id.* at 2.) Tracey Natal, who was eleven years old at the time, was also inside the store during the shooting. (*Id.*) Mrs. Rodriguez and Natal both confirmed Ravenell's testimony and identified Veal as one of the perpetrators. (*Id.* at 3.) Veal was sentenced to life imprisonment. (*Id.* at 4.) Veal did not file a direct appeal to the Superior Court. (*Id.*) On December 18, 1990, Veal filed a *pro se* petition for collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. § 9541, *et seq.* (*Id.*) On August 10, 1995, pursuant to Veal's PCRA petition, the Honorable Joseph I. Papalini reinstated Veal's appellate rights *nunc pro tunc.* (*Id.* at 5.) Petitioner then filed a direct appeal to the Pennsylvania Superior Court. In his appeal to the Superior Court, Veal was represented by Attorney David Rudenstein ("Rudenstein"). (Resp. at 2.) Veal raised the following issues for consideration by the Superior Court:

1) Is appellant entitled to a new trial, because the verdict was against the weight of the evidence?

2) Is appellant entitled to a new trial, because appellant's trial counsel was ineffective for failing to move, prior to trial, for the suppression of identification testimony of Mrs. Rodriguez and Tracey Natal?

3) Is appellant entitled to a new trial, because appellant's trial counsel was ineffective for failing to request proper eyewitness jury instructions?

*Commonwealth v. Veal,* Pennsylvania Superior Court 455 Pa.Super. 698, 688 A.2d 1231 (1996). Because it is relevant to my decision in this case, I will include a brief synopsis of the opinion issued by the Superior Court on November 27, 1996.

In its opinion affirming the judgment of sentence against Veal, the Superior Court first noted that Judge George J. Ivins, the trial judge, had already properly disposed of the first issue raised by Veal's appeal. Adjudicating Veal's ineffective assistance of counsel [hereinafter "IAC"] claims, the Superior Court stated:

Our standard of review in evaluating the claim of ineffective assistance of counsel is well-settled. We presume that trial counsel is effective and place on the defendant the burden of proving otherwise. *Commonwealth v. Blount,* 538 Pa. 156, 647 A.2d 199 (1994); *Commonwealth v. Pierce,* 537 Pa. 514, 645 A.2d 189 (1994); *Commonwealth v. Williams,* 524 Pa. 218, 230, 570 A.2d 75, 81 (1990). We are first required to determine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Edmiston,* 535 Pa. 210, 238, 634 A.2d 1078, 1092 (1993); *Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). If the claim is without merit, our inquiry ends because

mendation on October 1, 2003. Throughout this opinion, unless otherwise noted, the Report and Recommendation referred to as "R & R" is that filed by Magistrate Judge Rapoport on October 1, 2003.

counsel will not be deemed ineffective for failing to pursue an issue which is without basis. *Johnson, supra.* Even if the underlying claim has merit, the appellant still must establish that the course of action chosen by his counsel had no reasonable basis designed to effectuate the client's interest and, finally, that the ineffectiveness prejudiced his right to a fair trial. *Id.; Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

*Id.*

Thus, the Superior Court was unambiguous in its assertion that, under Pennsylvania law, in order to address Veal's claim of ineffective assistance of counsel, the Superior Court was first required to assess the merits of the underlying claim. Citing Pennsylvania case law, the Superior Court began its analysis by stating the relevant standard for the underlying claim of identification taint: "In reviewing claims of whether a defective pre-trial identification taints an in-court identification that flows from it, 'we must determine whether the identification procedure was so suggestive and conducive to irreparable mistaken identity so as to deny the accused due process.' " *Id.* (citing *Commonwealth v. Swinson,* 426 Pa.Super. 167, 626 A.2d 627, 630 (1995)). Furthermore, the Superior Court noted that "[t]he constitutionality of an in-court identification ... rests upon whether such identification is reliable ... [and] in gauging reliability, we employ a totality of the circumstances test." *Id.* (citing *Commonwealth v. Baker,* 614 A.2d 663 (Pa.1992)). The Superior Court further noted that the Pennsylvania Supreme Court had delineated several specific factors to be considered in the course of conducting an analysis of reliability: (1) the suggestiveness of the pre-trial identification; (2) the prior opportunity of the witness to observe the criminal act; (3) the accuracy of the witness' description; (4) the lapse of time between the act and any line-up; (5) and any failure to identify the defendant on prior occasions. *Id.* (citing *Commonwealth v. Ransome,* 485 Pa. 490, 402 A.2d 1379, 1382 (1979)). After reviewing the totality of the circumstances surrounding the identifications of Mrs. Rodriguez and Natal, and analyzing the applicable factors, the Superior Court stated that "Veal's arguments as to both Mrs. Rodriguez and Ms. Natal are meritless," and, therefore, counsel was not ineffective. *Id.*

Following the ruling by the Superior Court issued on November 27, 1996, Veal failed to file a timely petition for allowance of appeal with the Supreme Court of Pennsylvania. ® & R at 5.) Over nine months later, however, on September 15, 1997, Veal's newly appointed counsel, John Elbert ("Elbert") filed a petition for allowance of appeal in the Pennsylvania Supreme Court. (*Id.* at 5); (Resp. at 3.) The petition reasserted the same claims previously asserted before the Superior Court.[2] (R & R at 5); (Resp., Ex. I.) Veal's request for *allocatur,* however, was denied on February 23, 1998. (R & R at 5); *Commonwealth v. Veal,* 490 E.D. Allocatur Docket 1997. As I stated previously in *Veal v. Myers,* "the Pennsylvania Supreme Court's denial [of *allocatur*] is presumed to be on the merits." 126 F.Supp.2d 932, 936 (E.D.Pa.2000) (citing *Hull v. Kyler,* 190 F.3d 88 (3d Cir.1999)). Petitioner did not thereafter file a PCRA petition.

---

**2.** While Veal included federal grounds for the suppression of identification testimony in his brief to the Pennsylvania Superior Court, in his appeal to the Pennsylvania Supreme Court, he cited and discussed only state law relating to this claim. (Resp. to First Pet., Ex. A (Superior Court brief)); (Resp., Exhibit I (Petition for Allowance of Appeal)).

On July 31, 1998, Veal filed his original habeas petition claiming ineffective assistance of trial counsel for: (1) failing to move, prior to trial, for the suppression of identification testimony; and (2) failing to request proper jury instructions regarding eyewitness identification testimony. In their response to the petition, the Commonwealth argued that Veal's claims were procedurally defaulted because his *allocatur* petition was not timely, and because he had demonstrated neither cause nor prejudice to excuse the default. (R & R at 6). Agreeing with the Commonwealth, on October 23, 1998, Magistrate Judge Rapoport filed his first Report and Recommendation recommending that Veal's petition be denied. (*Id.*)

In response to the first R & R, Veal filed *pro se* objections in which he argued that the procedural default should be excused. Veal's argument largely centered around an unusual order obtained by Veal and entered by the Honorable Carolyn E. Temin of the Court of Common Pleas of Philadelphia County on August 15, 1997. (*Id.* at 7.) Judge Temin's order, which stated "that the defendant be allowed to proceed with a *nunc pro tunc* Petition for Allowance of Appeal to the Pennsylvania Supreme Court," appeared to grant Veal's request to proceed with a *nunc pro tunc* petition for allowance of appeal to the Pennsylvania Supreme Court.[3] (Resp., Ex. H (order)); (R & R at 7); *see also Veal v. Myers,* 126 F.Supp.2d 932 (E.D.Pa. 2000) (detailing procedural history). After an initial round of briefing regarding the unusual order, I appointed counsel for Veal. On May 8, 2000, Veal filed amended objections to the original R & R issued on October 23, 1998. On June 19, 2000, the Commonwealth responded, and on July 12, 2000, Veal filed a reply. On October 30, 2000, I heard oral argument on the issue of procedural default in light of the unusual Common Pleas Court Order, and on December 29, 2000, I issued an "Explanation and Order" concluding that the Commonwealth had waived the procedural default with respect to Veal's 1997 *pro se* motion. (R & R at 8); *Veal v. Myers,* 126 F.Supp.2d 932 (E.D.Pa.2000). Specifically, I held that "[i]f the Commonwealth wished to avoid the state court's waiver of the procedural default, it was incumbent upon it to appeal the Court of Common Pleas' order." *Veal,* 126 F.Supp.2d at 935 (citing *Hull v. Kyler,* 190 F.3d 88 (3d Cir.1999)).[4]

3. At the time of issuing the original R & R on October 23, 1998, Magistrate Judge Rapoport was unaware of Judge Temin's August 15, 1997 order. *Veal v. Myers,* 126 F.Supp.2d 932, 933 n. 5 (E.D.Pa.2000).

4. The Commonwealth now contends that subsequent investigation has revealed that it did not receive Judge Temin's order until thirty-one days after it was issued, at which point it was too late to file a timely appeal. Pa. R.A.P. 1113(a) (petition for allowance of appeal shall be filed ... within 30 days of the entry of the order of the Superior Court). In support thereof, the Commonwealth states that "all indications are" that they were not served with the judicial order, and that such a mistake is "unprecedented." (Resp. at 48.) In addition, the Commonwealth contends that new facts demonstrate that "Judge Temin's intent in her ambiguous order was not to excuse petitioner's non-compliance with the state supreme court's filing deadline for an *allocatur* petition ... [but rather,] she more likely intended merely to appoint counsel to file ... a 'petition for *allocatur nunc pro tunc*' on petitioner's behalf, to see if that court would excuse the noncompliance with its own deadline." (Resp. at 34.) In light of this newly discovered evidence, the Commonwealth, in its response to petitioner's second amended petition, asks this court to reconsider its previous order.

Initially, it is important to note that, pursuant to Federal Rule of Civil Procedure 59(e), a party may bring a motion for reconsideration within ten days of the entry of judgment. Fed.R.Civ.P. 59(e). Federal Rule of Civil Procedure 60(b) further provides that in the case of "newly discovered evidence," the motion

On July 9, 2001, Veal filed his first amended habeas petition, and on January 20, 2003 Veal filed a second amended petition. In his second amended petition, petitioner makes the following claims:[5] (1) the identification by eyewitness Mrs. Rodriguez was tainted (Second Amend. Pet. ¶ 9); (2) the identification by eyewitness Natal was tainted (*Id.* ¶ 10); (3) trial counsel Moore was ineffective for (a) failing to move to suppress these identifications, (b) failing to object to their admission at trial (*Id.* ¶ 12), (c) failing to request a continuance and take any necessary steps to force the appearance at trial of a witness named "Paco," and (d) failing adequately to investigate that allegedly exculpatory evidence (*Id.* ¶ 20); (4) appellate counsel Rudenstein was ineffective for failing to assert ineffective assistance of trial counsel (claim 3 and all of its subparts) in the Superior Court on reinstated direct appeal (*Id.* ¶¶ 13–14, 21–22); (5) *nunc pro tunc allocatur* counsel Elbert was ineffective for (a) failing to assert ineffective assistance of trial counsel on *allocatur,* and for (b) laboring under an actual conflict of interest since he represented co-defendant Ravenell at trial. (*Id.* ¶¶ 15, 23.)

## II. Discussion

### A. Standard of Review

This petition is governed by the revisions to the federal habeas statute enacted in the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–32, 110 Stat. 1214 (1996), effective April 24, 1996 ("AEDPA"). Pursuant to AEDPA, "when a federal court reviews a state court's ruling on federal law, or its application of federal law to a particular set of facts, the state court's decision must stand unless it is 'contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lam v. Kelchner,* 304 F.3d 256, 263 (3d Cir. 2002) (quoting 28 U.S.C. 2254(d)(1)).

A state court decision is "contrary" to clearly established Supreme Court prece-

---

shall be made within one year of the challenged judgment. Fed.R.Civ.P. 60(b). In this case, the Commonwealth's motion, subsumed within its *response to petitioner's* second amended petition, was filed on April 7, 2003. The order which the Commonwealth would like this court to reconsider was filed on December 29, 2000, almost two and a half years prior to the Commonwealth's motion for reconsideration. Furthermore, while the Commonwealth admits that a recent "reconstruction of its previously incomplete file" led to the discovery of this new information, it is not apparent why the file could not have been reconstructed earlier, and the evidence presumably discovered at that time. (Resp. at 33); *see also* Fed.R.Civ.P. 60(b) (newly discovered evidence rule applicable to evidence "which by due diligence could not have been discovered").

Furthermore, in this case, the Commonwealth makes the admittedly "unprecedented" allegation that the state court failed to serve a copy of its own order on the Common-

wealth. A federal court on habeas review will indulge a presumption of regularity in state court proceedings, and I decline to find that the state court failed to serve a judicial order. *Meyers v. Gillis,* 93 F.3d 1147, 1151 (3d Cir. 1996). Furthermore, even if the Commonwealth misplaced the order, the Commonwealth admits that it was served with a copy of Judge Temin's order as an attachment to petitioner's *allocatur* petition, filed on September 15, 1997, thirty-one days after the order was entered. (Resp. at 49.) At that point, the Commonwealth could have petitioned for permission to file its own appeal *nunc pro tunc* if it so desired. For all of these reasons, I decline to reconsider the order entered on December 29, 2000.

5. Magistrate Judge Rapoport delineated Veal's claims as outlined above. As Veal did not object to this approach and, in his objections to the R & R, likewise adopted this outline for purposes of addressing his claims, I too will use this outline. (R & R at 10 n. 5, n. 6); (Pet'r's Objections to R & R at 1.)

dent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), *quoted in Lam*, 304 F.3d at 263. Under the "unreasonable application" clause, habeas relief will be justified "when the state court 'correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 407–08, 120 S.Ct. 1495). Furthermore, with respect to this clause, habeas relief will only be warranted if the "state court's application of clearly established federal law was objectively unreasonable," not merely "incorrect." *Williams*, 529 U.S. at 409–410, 120 S.Ct. 1495, *quoted in Lam*, 304 F.3d at 263.

### B. Exhaustion and Procedural Default

■ Before a federal court can grant habeas relief to a state prisoner, the prisoner must have exhausted his state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). In this regard, in order to give the state court a full and fair opportunity to resolve a federal constitutional claim, state prisoners must invoke one complete round of the state's appellate review process. *Id.* at 845, 119 S.Ct. 1728. Additionally, the prisoner must "fairly present" his federal claims to the state courts. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999). "Fairly presenting" a federal claim to the state courts requires the prisoner to present the factual and legal substance of the claim in such a manner that the state court is on notice that a federal claim is being asserted. *Id.* at 261; *see also Evans v. Court of Com-*

*mon Pleas, Delaware County*, 959 F.2d 1227, 1231 (3d Cir.1992) ("[T]he claim brought in federal court must be the substantial equivalent of that presented to the state courts."). In other words, "both the legal theory and the facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court." *Evans*, 959 F.2d at 1231 (internal citations omitted).

■ In the event that a petitioner has not "fairly presented" his claims to the state courts, but no state avenue remains available for that purpose, the unexhausted claims may be deemed "exhausted," even if the state courts have not had the opportunity to pass upon their merits. *Whitney v. Horn*, 280 F.3d 240, 252 (3d Cir.2002). In that case, federal review of the merits of those claims is precluded if the "prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 749, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A state procedural rule provides an independent and adequate basis for precluding federal review of a petitioner's claims if "(1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal in this instance is consistent with other decisions." *Lines v. Larkins*, 208 F.3d 153, 170 (3d Cir.2000). The one-year statute of limitations applicable to the PCRA, and its prohibition against previously litigated and waived claims, are adequate and independent state grounds precluding federal habeas review." *Id.* at 164–66. "Claims deemed exhausted because of a state procedural bar are procedurally defaulted, and federal courts may not consider their merits un-

less the petitioner 'establishes cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Lines v. Larkins,* 208 F.3d 153 (3d Cir.2000) (quoting *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999)); *see also Coleman,* 501 U.S. at 731, 111 S.Ct. 2546.

With these underlying principles in mind, I will evaluate each of the five claims raised by Veal in his petition for habeas relief.

## III. Claims

### (1) the identification by eyewitness Mrs. Rodriguez was tainted; (2) the identification by eyewitness Natal was tainted

Veal argues that he is entitled to habeas relief because the identifications of both Natal and Mrs. Rodriguez were tainted. The Commonwealth argues that because Veal did not raise his claims of identification taint on direct appeal as independent due process claims, but rather raised them via a Sixth Amendment ineffective assistance of counsel ("IAC") claim, Veal's federal constitutional claims are barred because they were never fairly presented to the state court. (Resp. to Objections at 3.) In response, while Veal concedes that both his appeal from the judgment of sentence filed in the Pennsylvania Superior Court and his *allocatur* petition filed in the Pennsylvania Supreme Court only raised the identification issue in terms of trial counsel's ineffectiveness, Veal argues that the federal due process claims were "embedded" within his ineffectiveness claims such that these claims were fairly presented and are not defaulted. (Pet'r's Objections to R & R at 3.)

There is currently a circuit split on the issue of whether the prior exhaustion of an IAC claim likewise exhausts the underlying claim for purposes of habeas review. *See Odem v. Hopkins,* 192 F.3d 772, 775 (8th Cir.1999) (holding that claim was exhausted by virtue of having been presented as an IAC claim in state courts); *Ramdass v. Angelone,* 187 F.3d 396, 409 (4th Cir.1999), *aff'd on different grounds,* 530 U.S. 156, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000) (same); *but see Wilder v. Cockrell,* 274 F.3d 255, 260–62 (5th Cir.2001) (holding that state presentation of IAC claim did not serve to exhaust underlying claim). Acknowledging the split, the Commonwealth contends that the Third Circuit has taken the position that the prior presentation of an IAC claim in state court does not serve to exhaust the underlying claim, and cites *Dooley v. Petsock,* 816 F.2d 885 (3d Cir.1987), *Senk v. Zimmerman,* 886 F.2d 611 (3d Cir.1989), and *Gattis v. Snyder,* 278 F.3d 222 (3d Cir.2002), in support thereof.[6] In order to assess the Commonwealth's claim, I will examine these Third Circuit cases.

In *Dooley v. Petsock,* petitioner filed a petition for habeas relief asserting that his trial counsel was ineffective for failing to seek the disqualification of the District Attorney, who had previously represented petitioner on a similar charge. 816 F.2d 885, 888 (3d Cir.1987). Notably, in his petition for habeas relief, petitioner did not separately assert the underlying claim that this conflict violated his due process right to a fair trial. Following the district court's dismissal, petitioner renewed his IAC claims before the Third Circuit on appeal. Upholding the lower court, the Third Circuit similarly "conclude[d] that ... [Petitioner's] claim that ... [counsel] was ineffective for not having sought ... [the district attorney's] disqualification must fail." *Id.* at 889. In reaching this

---

6. The Commonwealth also cites a non-precedential case, *Willis v. Vaughn,* 48 Fed.Appx. 402, 2002 WL 31108917 (3d Cir.2002), which I do not discuss.

conclusion, the Third Circuit recognized "from the outset ... that we need not determine whether a motion to disqualify ... would have been successful" in order to adjudicate the IAC claim. *Id.* Applying *Strickland v. Washington,* the Third Circuit reasoned that even "[a]ssuming that the motion had arguable merit, our inquiry is confined to questioning whether trial counsel's failure to raise the claim was reasonable." *Id.* at 890 (citing *Strickland v. Washington,* 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Because the Third Circuit ultimately found that petitioner had failed to sustain his burden of demonstrating the unreasonableness of counsel's decision, petitioner's IAC claim failed.

In a footnote of particular relevance to the question of exhaustion, the Third Circuit further "observe[d] that ... [petitioner] has raised no due process claim before this court .... [petitioner], as previously discussed, raised only a Sixth Amendment claim of ineffective assistance of counsel. Although a due process claim might have arguable merit ... such a claim has not been raised in the Pennsylvania courts, and therefore remains unexhausted." *Id.* at 889 n. 3.

In *Senk v. Zimmerman,* petitioner appealed the district court's denial of habeas relief, asserting that he was entitled to relief because his trial counsel, and all subsequent counsel, were ineffective for failing to challenge the constitutionality of a particular jury instruction used at his trial. 886 F.2d 611, 613 (3d Cir.1989). In support of this claim, Senk relied on two cases, *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), both of which were decided at least seventeen years after Senk's trial. *Id.* at 613. In adjudicating Senk's IAC claim, however,

the Third Circuit stated that "Senk's contention that he is entitled to relief only indirectly implicates the *Sandstrom* and *Francis* decisions, as we are concerned with his attorney's performance and not simply whether the Sandstrom–Francis rule was violated." *Id.* at 614. The Third Circuit went on to assume, *arguendo,* that the jury instruction in Senk's case was unconstitutional, and nevertheless found that, under *Strickland,* counsel's conduct was within the "wide range of reasonable professional assistance." *Id.* at 618 (citing *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052).

In *Gattis v. Snyder,* the habeas petitioner claimed, *inter alia,* that his due process rights were violated when his conviction and death sentence were affirmed by the Delaware Supreme Court on state postconviction review based on a theory that was not originally presented to the jury or the court that tried and sentenced him. 278 F.3d 222, 237 (3d Cir.2002). On appeal, the Third Circuit noted that "[a]s far as we can determine, this [due process] claim has not been presented to the state courts and, thus, is unexhausted." *Id.* In a footnote, the Third Circuit further stated:

> The District Court states that Gattis presented his argument to the Delaware Supreme Court as one of ineffective assistance of trial counsel, evidently concluding that that would be sufficient for exhaustion purposes. Aside from the fact that it would not be sufficient (because it involves a completely different legal theory,) we do not see in the record where it was expressly presented to the Delaware Supreme Court.

*Id.* at 237 n. 6 (internal citations omitted). Nonetheless, the Third Circuit found that "because we agree with the District Court that the claim is meritless, and because the District Court could have dismissed the claim as meritless regardless of whether it

was exhausted pursuant to section 2254(b)(2), we shall not vacate the District Court's judgment and remand for further proceedings with regard to this claim." *Id.* at 237–38.

With these three cases in mind, I will examine the facts and procedural posture of the case at hand. Unlike the present case, the petitioners in both *Dooley* and *Senk* asserted IAC claims in federal court but did not separately assert the underlying claims independently. Likewise, in both cases, the Third Circuit assumed, for purposes of analysis, that the underlying claim had merit, but nonetheless found that counsel's actions were reasonable under *Strickland*. In the course of performing these respective analyses, the Third Circuit noted both that an IAC claim only indirectly implicates the underlying claim, *Senk*, 886 F.2d at 614, and that an arguably meritorious claim which was not raised in the state courts is unexhausted, *Dooley*, 816 F.2d at 889 n. 3. In *Gattis*, on the other hand, at least from the district court's perspective, petitioner did just what Veal is attempting to do in this case: petitioner raised his constitutional claim within an IAC claim in state court, and raised the claim independently before the federal habeas court. In *Gattis*, however, the Third Circuit expressly noted that although the lower court stated that petitioner had presented his claim in state court as an IAC claim, the Third Circuit could not find that in the record. *Gattis*, 278 F.3d at 237 n. 6 ("The District Court states that Gattis presented his argument to the Delaware Supreme Court as one of ineffective assistance of trial counsel ... we do not see in the record where it was expressly presented to the Delaware Supreme Court."). Thus, in *Gattis*, the Third Circuit was not presented with a situation in which the state court had considered the merits of petitioner's claim.

The treatment of Veal's claims in the prior state court proceedings presents a distinctly different situation for my review. While it is true, in the abstract, that a court considering an IAC claim may never reach the underlying constitutional claim, take *Dooley* and *Senk* as examples, this was not the case here. In other words, although it is entirely possible that the rejection of an IAC claim would not include any necessary ruling on the underlying claim, the opinion of the Pennsylvania Superior Court expressly stated that, in addressing Veal's IAC claims under Pennsylvania law, the court is "first required to determine whether the issue underlying the claim is of arguable merit."[7] *Commonwealth v. Veal*, 455 Pa.Super. 698, 688 A.2d 1231 (1996). Unlike the federal courts in *Dooley*, *Senk*, and *Gattis*, the Pennsylvania Superior court did not engage in a form of analysis which assumed, *arguendo*, that the claim had merit, thus proceeding to analyze the reasonableness of counsel's behavior.[8] Instead, the state court both began and ended its analysis with the merits, ultimately deciding that Veal's claim of identification taint lacked any. Moreover, the Superior Court devot-

---

7. In *Rompilla v. Horn*, the Third Circuit noted that although the Pennsylvania Supreme Court uses a three-prong IAC test as opposed to the federal two-pronged *Strickland* test, "the Pennsylvania Supreme Court has explicitly held that the state standard is 'the same' as *Strickland's* and that Pennsylvania law does not provide 'any greater or lesser protection than the Sixth Amendment.' " 355 F.3d

233, 248 (3d Cir.2004) (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 976–77 (1987)). The Third Circuit further referred to the difference between the two tests as an "essentially stylistic choice." *Id.*

8. This difference in analytical technique is probably due to the "stylistic" difference between Pennsylvania law and *Strickland*.

ed several pages of its opinion to this analysis.

■ As aptly stated by the Commonwealth itself in its Response to [Veal's] Second Amended Petition for Habeas Corpus:

The exhaustion requirement "is not a mere formality" to be subverted when it suits a prisoner's litigation strategy but, instead, serves important interests of comity and federalism. *O'Halloran v. Ryan*, 835 F.2d 506 (3d Cir.1987). The rule "expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions," and, in so doing, "properly acknowledges that state courts, no less than federal courts, are bound to safeguard the constitutional rights of state criminal defendants." *Landano v. Rafferty*, 897 F.2d 661, 668 (3d Cir.), *cert. denied*, 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 23 (1990).

(Resp. at 23–24.) Likewise, in *Williams v. Taylor*, the Supreme Court held that § 2254(d)(1), as amended by AEDPA, "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). In light of these principles, to find that Veal failed to exhaust his underlying claims in state court, when the state court

devoted a substantial portion of its opinion to the merits of those claims, would be in derogation of the principles elucidated under AEDPA.[9]

Having concluded, therefore, that the claims of identification taint underlying Veal's IAC claims were fairly presented to the state courts for purposes of exhaustion and were found to be meritless, this court's review of these claims is limited by AEDPA. Pursuant to 28 U.S.C. § 2254(d), a state court's adverse resolution of a claim of constitutional error provides a basis for federal habeas relief only if the state adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or if it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ Under federal law, a pretrial identification procedure violates due process, and requires exclusion of the testimony based on that procedure, if it is "so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). "The general inquiry is

---

9. In the most recent Third Circuit opinion to address issues of procedural default, comity, and federalism, *Villot v. Varner*, the Third Circuit reiterated its adherence to the principle that "a federal claimant's procedural default precludes federal habeas review ... *only* if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), *quoted in Villot v. Varner*, 373 F.3d 327, 336 (3d Cir.2004). Although the context of the decision in *Villot*, in which a state court had

adjudicated a claim on the merits despite the existence of a procedural default, is different from the context of the present case, in which the Superior court addressed the merits of an underlying due process claim of identification taint as a by-product of its method of evaluating an IAC claim, *Villot* nevertheless reinforces the general proposition that the federal courts will look to the actions of the state court to determine whether principles of comity and federalism require a finding that a claim has been procedurally defaulted.

whether the procedure was unnecessarily suggestive, and if so, whether its corrupting influence outweighs the reliability of the identification testimony." *Burkett v. Fulcomer*, 951 F.2d 1431, 1448 (3d. Cir. 1991) (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). Furthermore, the reliability of a challenged identification is to be judged under a test employing the totality of the circumstances. *Manson*, 432 U.S. at 113, 97 S.Ct. 2243. The factors relevant to determining the reliability of the identification are:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

*Manson*, 432 U.S. at 114, 97 S.Ct. 2243; *see also Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In his objections to Magistrate Rapoport's R & R, Veal claims that the state court misapplied federal law when it found that the identifications of Mrs. Rodriguez and Natal were admissible.[10] (Pet'r's Objections to R & R at 6–7.) Citing *Manson v. Brathwaite*, petitioner summarily states that "[a]pplying the federal due process test for the likelihood of misidentification, which considers the totality of the circumstances, properly results in a finding that

Ms. Natal's identifications were impermissibly tainted." (*Id.* at 7.) Veal makes the same argument with respect to the identification of Mrs. Rodriguez.

In order to determine whether the state court's adjudication of petitioner's claims of identification taint was contrary to, or an unreasonable application of federal law, I must turn to the opinion issued by the Pennsylvania Superior Court. *Commonwealth v. Veal*, 455 Pa.Super. 698, 688 A.2d 1231 (1996). As noted previously, in evaluating Veal's claim that counsel was ineffective for failing to move to suppress the identifications of Mrs. Rodriguez and Natal, the Superior Court first determined "whether the issue underlying the claim [wa]s of arguable merit." *Id.* To evaluate the underlying claims, the Superior Court began by setting forth the state standard for suppression of in-court identifications based on allegedly tainted pre-trial identifications. In this regard, the Superior Court cited *Commonwealth v. Ransome*, 485 Pa. 490, 402 A.2d 1379 (1979) and *Commonwealth v. Sexton*, 485 Pa. 17, 400 A.2d 1289 (1979), as well as additional state cases derived therefrom. In both *Ransome* and *Sexton*, the Pennsylvania Supreme Court based its analysis directly on United States Supreme Court cases, including *Manson v. Brathwaite* and *Neil v. Biggers*.

Furthermore, the Superior Court noted that the Pennsylvania Supreme Court had delineated several specific factors to be considered in the course of conducting an analysis of reliability: (1) the suggestive-

---

10. In his objections to the R & R, petitioner asked that the Court afford him a hearing at which to establish this proposition. (Pet'r's Objections to R & R at 6–7.) In light of petitioner's failure to fully explicate his argument that the state court misapplied federal law, I asked petitioner to file a supplemental brief addressed to this issue. Petitioner subsequently filed a supplemental brief on June

23, 2004, and the government filed a response on July 1, 2004. Petitioner's supplemental brief, however, was addressed to the merits of the claims themselves as opposed to whether or not the state court adjudication of the claims was contrary to, or an unreasonable application of, clearly established federal law (as the inquiry must be on federal habeas review).

ness of the pre-trial identification; (2) the prior opportunity of the witness to observe the criminal act; (3) the accuracy of the witness' description; (4) the lapse of time between the act and any line-up; (5) and any failure to identify the defendant on prior occasions. *Commonwealth v. Veal,* 455 Pa.Super. 698, 688 A.2d 1231 (1996) (citing *Ransome,* 402 A.2d at 1382). After reviewing the totality of the circumstances surrounding the identifications of Mrs. Rodriguez and Natal, and analyzing the applicable factors, the Superior Court stated that "Veal's arguments as to both Mrs. Rodriguez and Ms. Natal are meritless." *Id.*

■ The cases upon which the Superior Court based its analysis establish state standards and applications which are consistent with those in the federal cases upon which they are based. Although the Superior court did not directly cite United States Supreme Court precedent in conducting its analysis, citation to federal case law is not a prerequisite to deferential treatment under AEDPA. *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002). In sum, I find that the Pennsylvania Superior Court's adjudication of these claims is both fully in accord with United States Supreme Court precedents, and a reasonable application thereof. 28 U.S.C. § 2254(d)(1). Furthermore, I find that the state court decision was a reasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(2).

**(2) Claim that trial counsel Moore was ineffective**

**(a) for failing to move to suppress the identification testimony of Mrs. Rodriguez and Natal**

The Commonwealth contends that, because Veal did not cite federal grounds for the suppression of identification in his *allo-*catur petition to the Pennsylvania Supreme Court, the claim that trial counsel was ineffective for failing to move to suppress the identifications was not exhausted and thus is procedurally defaulted.

■ As previously discussed, while Veal included federal grounds for the suppression of identification testimony in his brief to the Pennsylvania Superior Court, in his appeal to the Pennsylvania Supreme Court, he cited and discussed only state law relating to this claim. *See supra,* note 2. Nonetheless, the Third Circuit has noted that for purposes of exhaustion, "this court and our sister circuits have looked to the substance of the claim presented to the state courts, rather than its technical designation." *Evans v. Court of Common Pleas,* 959 F.2d 1227, 1231 (3d Cir.1992); *see also Bisaccia v. Attorney Gen. of New Jersey,* 623 F.2d 307, 312 (3d Cir.1980) (holding that "[b]ecause the substance of appellant's state claim is virtually indistinguishable from the due process allegation now before the federal court, and because the method of analysis is indistinct ... exhaustion of state remedies has been met"). In this regard, the Third Circuit in *Evans* cited as "instructive" the Second Circuit's elucidation of the ways in which a state defendant may fairly present a federal claim to the state courts:

(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Evans,* 959 F.2d at 1232 (quoting *Daye v. Attorney General of New York,* 696 F.2d 186 (2d Cir.1982 (en banc))). In this case,

it is clear that a state court addressing an IAC claim would understand the claim to arise under both state constitutional, as well as federal, law. In fact, the state cases cited in Veal's *allocatur* petition analyze IAC claims under *Commonwealth v. Pierce,* a case in which the Pennsylvania Supreme Court held that the IAC standard under Pennsylvania law and the federal *Strickland* test "constitute an identical rule of law in this Commonwealth." *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *see also Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078 (1993) (cited in Veal's *allocatur* petition); *Commonwealth v. Johnson,* 527 Pa. 118, 588 A.2d 1303 (1991) (same). Veal's IAC claim, therefore, is the "substantial equivalent of that presented to the state courts" for purposes of exhaustion. *Landano v. Rafferty,* 897 F.2d 661, 668, 669 (3d Cir. 1990) ("substantial equivalence . . . mean[s] that both the legal theory and the facts on which a federal claim rests must have been presented to the state courts").

Because I reject the Commonwealth's argument that this claim is procedurally defaulted, and because Veal's IAC claim was addressed by the Pennsylvania Superior Court in his reinstated direct appeal, I review the state decision to determine whether it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or if it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); 28 U.S.C. § 2254(d).

As stated previously, the Pennsylvania Superior Court examined Veal's IAC claims under the Pennsylvania standard for IAC, which is the same as the federal standard. Ultimately, the Superior Court

held that Veal's IAC claim regarding counsel's failure to move to suppress the identifications of Mrs. Rodriguez and Natal failed because the underlying claims, specifically the reliability of the identifications themselves, were themselves meritless. In other words, "if the claim is without merit, our inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue which is without basis." *Commonwealth v. Veal,* 455 Pa.Super. 698, 688 A.2d 1231 (1996). This approach is also in accord with federal law. *See United States v. Fulford,* 825 F.2d 3, 9 (3d Cir.1987) (defendant not prejudiced by counsel's failure to pursue meritless issue).

■ I find, therefore, that the state court determination regarding Veal's IAC claim relating to the identifications was neither contrary to, nor an unreasonable application of, federal law as determined by the United States Supreme Court. I further find that the decision was based on a reasonable determination of the facts in light of the evidence presented.

**(b) for failing to object to the admission of the identifications at trial, (c) for failing to request a continuance and take any necessary steps to force the appearance at trial of a witness named "Paco," and (d) for failing adequately to investigate that allegedly exculpatory evidence**

These claims have never been adjudicated by the state courts. These claims, therefore, have not been exhausted. Because independent and adequate state rules preclude Veal's return to state court at this time, these claims are procedurally defaulted. Furthermore, Veal cannot demonstrate cause and prejudice for the default, and refraining from addressing the merits of these claims will not result in a fundamental miscarriage of justice.

These claims, therefore, cannot be reviewed. *See supra* Section II.A.

### (3) Claim that appellate counsel Rudenstein was ineffective

### (a) for failing to assert the ineffective assistance of trial counsel (claim 3 and all of its subparts) in the Superior Court on reinstated direct appeal

Veal claims that appellate counsel Rudenstein was ineffective for failing to argue certain claims in the Superior Court on reinstated direct appeal. At the outset, it should be noted that Rudenstein did argue claim 3(a), specifically the claim that trial counsel was ineffective for failing to move to suppress the identification testimony of Mrs. Rodriguez and Natal, before the Superior Court. Veal's claim with respect to 3(a), therefore, fails. With respect to the remaining subparts of claim 3, petitioner failed to raise these claims in state court, and is likewise precluded from raising them before this court for the reasons stated with respect to claims 3(b), (c), and (d).

### (4) Claim that *nunc pro tunc allocatur* counsel Elbert was ineffective

### (a) for failing to assert ineffective assistance of trial counsel on *allocatur,* and (b) for laboring under an actual conflict of interest since he represented codefendant Ravenell at trial.

Having never been raised in state court proceedings, these claims are likewise defaulted. It is worth noting however, that a criminal defendant has no constitutional right to counsel beyond his first appeal as of right. Thus, there can be no IAC claim for representation at that stage of review. *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (constitutional right to counsel is guaranteed to a defendant both for trial and for the first appeal as of right, and no further). Errors or omissions of counsel in discretionary or collateral proceedings, therefore, cannot form the basis for federal habeas review.

## IV. Conclusion

For the reasons stated above, Veal's petition for habeas relief is denied.

### ORDER

AND NOW, this _____ day of July 2004, it is **ORDERED** that petitioner's Second Amended Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 is **DENIED** and **DISMISSED**. There is no probable cause to issue a certificate of appealability.[11]

**11.** Although I am not certifying this issue for appeal, it should be noted that there is a circuit split on the question of whether the prior exhaustion of an IAC claim likewise exhausts the underlying claim for purposes of habeas review. This question is not ultimately dispositive in this case, however, because the Superior Court expressly reached the merits of Veal's underlying claims.