NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1034
_____

WILLIAM PROSDOCIMO,
                                        Appellant

v.

*SECRETARY, PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
DISTRICT ATTORNEY OF ALLEGHENY COUNTY PENNSYLVANIA;
ATTORNEY GENERAL OF PENNSYLVANIA,


*(Pursuant to Rule 43(c), Fed. R. App. P.)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 08-cv-1500)
District Judge:  Hon. Joy Flowers Conti
_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2012

Before:  FUENTES, JORDAN, and NYGAARD, *Circuit Judges*.

(Filed: January 17, 2012)
_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

William Prosdocimo appeals an order of the United States District Court for the Western District of Pennsylvania denying his petition under 28 U.S.C. § 2254 for habeas relief from a state murder conviction. Prosdocimo argues that his petition should have been granted because his constitutional right to due process was violated when the prosecutor at his trial failed to correct a witness's allegedly false testimony. For the reasons that follow, we will affirm.

## I.      Factual Background And Procedural History

### A.      *Factual Background*

Prosdocimo was convicted of first-degree murder in the shooting death of Thomas Sacco, for which he received a sentence of life imprisonment. At his trial, the Commonwealth of Pennsylvania called Charles Kellington to testify that Prosdocimo had arranged for Miles Gabler to shoot Sacco. To discredit Kellington, Prosdocimo called Gabler as a witness. Gabler admitted to killing Sacco, but claimed that he had been paid to kill Sacco by Kellington and that he did not know Prosdocimo at the time. Gabler further testified that he had apprised Charles Rossi of his plan to kill Sacco, and arranged for Rossi to drive him to the location where he shot Sacco. Seeking to refute Gabler's testimony, the Commonwealth called Rossi as a witness on rebuttal. Contradicting Gabler, Rossi testified that he had no advance knowledge that Sacco was to be killed and that he did not serve as Gabler's driver on the night in question.

2

On direct examination, Rossi stated that he had entered into a "plea bargain with the District Attorney's Office of Pennsylvania and the United States Government." (J.A. at 435.) Among other things, the agreement required Rossi to provide information concerning the deaths of Sacco, Norman McGregor, and Melvin Pike, and to plead guilty to violating the Racketeer Influenced and Corrupt Organizations ("RICO") statute, for which he would serve a 20-year term of incarceration. In exchange for Rossi's cooperation, the plea bargain stated that the information Rossi provided would not be used against him by the United States or the Commonwealth "in any prosecution relating to any matters," other than the RICO charge. (J.A. at 65.)

During direct examination, the Commonwealth asked Rossi about his involvement in the McGregor and Pike murders:

Q:    Where were those pleas entered, sir?
A:    In the Ricco [sic] – is that what you are talking about, the Ricco [sic]?
Q:    Yes, which court?
A:    Oh, that was in the Federal Court, yes, from a Judge Simmons.
Q:    Which two murders did you plead to, sir?
A:    The Pike murder in Washington County and the McGregor murder in Allegheny County.
Q:    You said the Pike murder. Are you referring to one Melvin Pike?
A:    That's correct.
Q:    When you say the McGregor murder, are you referring to one Norman McGregor?
A:    That's correct.
Q:    In the Pike murder, sir, were you actually the killer?
A:    No.
Q:    And in the McGregor murder, were you actually the killer?
A:    No.
Q:    But you fully admitted to participating in the acts that led to the death of those two men?
A:    I do.

3

(J.A. at 436-37.)  On cross-examination, Prosdocimo asked Rossi to elaborate on his acknowledged involvement in the McGregor and Pike murders, seeking to ascertain whether Rossi was immune from prosecution for those murders:

Q:      Now, sir, you have told us that you have pled guilty in Federal Court to a racketeering statute, and the basis or predicate for that was two murders.  Is that correct?

A:      That's true.

Q:      And have you received immunity from the Federal Government?

A:      Immunity?

Q:      Yes, from prosecution to other crimes that you are testifying about. In other words, have you been granted immunity by the Federal Government?

A:      Well, there is an immunity, from what I understand, on the one crime, and that's the Mitchell case.

Q:      Has the Commonwealth of Pennsylvania granted you immunity against the use of your testimony or your own words which you may speak in court or in interviews so that they won't be used against you in any subsequent prosecution of you?

A:      Not that I know of.  It's never been brought up to me.

Q:      Has there been any promises made to you by [the prosecuting attorney] or anybody from the District Attorney's Office that you wouldn't be prosecuted in the State of Pennsylvania with Mr. McGregor's murder?

A:      No, none that I know of.

Q:      Have there been any promises made by the State of Pennsylvania or any county that you will not be prosecuted for the murder of Mr. Pike?

A:      Not that I know of.

Q:      Well, as you are sitting here today do you expect to be prosecuted for the murder of Norman McGregor?

A:      Not the way I understand it.  The way I understand it, the Ricco [sic] Act covers my prosecution on the Pike and McGregor case.

Q:      Okay, but here you are sitting here today telling us that somebody told you that you won't be prosecuted for your murder of Norman McGregor.  Is that correct?

A:      No, I didn't say that, you said that….

Q:      Mr. Rossi, have you entered into an agreement with the authorities from Washington County or anyplace in the State of Pennsylvania that you will not be prosecuted for the murder of Melvin Pike?

4

A: I haven't talked to anyone from Washington County. Like I explained to you before, sir, the only thing I know with regard to the Pike and McGregor case is that those two murders I pled guilty under the Ricco [sic] Act, and it was my understanding that that covered that.

Q: Okay, so the answer to the question that I am asking you is no, that no one made any promises. Is that correct?

A: That's correct.

(J.A. at 440-43.) The Commonwealth did not, at any point, clarify that the plea agreement in fact immunized Rossi from a Commonwealth prosecution for the McGregor and Pike murders, and the jury ultimately returned a guilty verdict against Prosdocimo.

B. *Procedural History*

After his trial concluded, Prosdocimo filed post-verdict motions challenging his conviction. By then, a copy of Rossi's plea agreement had come to light,[1] and, in the briefing in support of the post-trial motions, Prosdocimo argued that his conviction should be reversed because the prosecutor failed to correct Rossi's "deliberate[ ] … lie" regarding the scope of his plea agreement. (J.A. at 82.) The trial court rejected that argument, reasoning that Prosdocimo had waived it by raising it only in his briefing and not in the post-verdict motions themselves. Prosdocimo appealed to the Superior Court, which likewise deemed the issue waived. He then raised the argument a final time on

[1] Prosdocimo was tried in the Court of Common Pleas of Allegheny County. Although the Allegheny County District Attorney and the Attorney General for the Commonwealth of Pennsylvania were signatories to Rossi's plea agreement, it appears that the prosecuting attorney in Prosdocimo's trial was unaware of the scope of the plea agreement's immunity with respect to the McGregor and Pike murders. During a sidebar conference, the prosecutor informed the judge that "we didn't make any agreement because it was our understanding the basis for the [RICO] plea is the murder, and that you could not prosecute him for something he pled to in Federal Court." (J.A. at 445-46.) Defense counsel, likewise, was unaware of the plea agreement because the Commonwealth apparently never turned it over during discovery.

5

direct appeal, in an unsuccessful petition for discretionary review by the Pennsylvania Supreme Court.

Thereafter, Prosdocimo collaterally attacked his conviction in state court by filing a petition under the Post Conviction Hearing Act ("PCHA"). Among other claims, Prosdocimo's petition alleged that trial counsel was ineffective for failing to properly raise the claim concerning Rossi's allegedly false testimony in a post-verdict motion. The PCHA court rejected that claim, cursorily stating that the allegedly false statements were "accepted by the jury after thorough cross-examination" and that the claim was meritless because "[n]o independent evidence of perjury [was] offered … ." (J.A. at 315.) Prosdocimo appealed that decision to the Superior Court, which agreed with the PCHA Court that "all of the issues which had not been finally litigated on their merits plainly lack merit, and so counsel could not be deemed ineffective for failing to raise them." (J.A. at 369.) Prosdocimo's ensuing petition for discretionary review by the Pennsylvania Supreme Court was denied without explanation.

Prosdocimo next filed a petition for a writ of habeas corpus in the United States District Court for the Western District of Pennsylvania. His petition was referred to a Magistrate Judge, who recommended that it be dismissed. On December 14, 2010, the District Court accepted the Magistrate Judge's recommendation, over Prosdocimo's objections. The Court dismissed Prosdocimo's petition and declined to issue a certificate of appealability.

This timely appeal followed. We granted a certificate of appealability as to the sole issue of whether Prosdocimo's constitutional right to due process was violated by the

6

Commonwealth's use of, and failure to correct, the testimony of Charles Rossi relating to an immunity agreement.

## II.     Discussion[2]

Prosdocimo argues that he is entitled to habeas relief because the prosecutor's failure to correct Rossi's testimony violated his right to due process.

Although the parties contest whether Prosdocimo properly exhausted that claim in state court,[3] they agree that, to the extent he did, review in this Court is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  They further agree that, employing the standard articulated in AEDPA, we should assess whether the PCHA court's determination that Prosdocimo's due process claim is meritless "was contrary to,

---

[2] The District Court had jurisdiction over Prosdocimo's petition pursuant to 28 U.S.C. § 2254.  We have appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and "review[] [the] District Court's denial of habeas corpus relief de novo."  *Vega v. United States*, 493 F.3d 310, 314 (3d Cir. 2007).

[3] The Commonwealth argues that Prosdocimo's claim was not properly exhausted. Prosdocimo responds that the exhaustion requirement is satisfied in this case because the PCHA court was presented with an ineffective assistance of counsel claim that it rejected by reference to the merits of the separate, underlying due process claim raised in Prosdocimo's federal habeas petition.  Some courts have accepted Prosdocimo's reasoning, *see Ramdass v. Angelone*, 187 F.3d 396, 409 (4th Cir. 1999) ("Even though the [Petitioner's due process] claim appeared under the heading of ineffective assistance of counsel," the due process claim was properly exhausted and the state court's decision that the underlying claim had no merit was reviewed under § 2254(d)(1)); *Veal v. Myers*, 326 F. Supp. 2d 612, 622 (E.D. Pa. 2004) (concluding that, when the state court has discussed the merits of a habeas petitioner's claim, a holding that he or she failed to exhaust those claims would not accord with the principle of deference to state decisions that is articulated in the Antiterrorism and Effective Death Penalty Act), but we need not express an opinion on the issue of exhaustion because it is apparent that Prosdocimo's claim fails on the merits, *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

7

or … an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1). It is undisputed that the PCHA court's determination is the relevant decision for AEDPA purposes, *see Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008) (holding that our review under § 2254(d)(1) extends to the state decision that either "represents the state courts' last reasoned opinion on th[e] topic or has not been supplemented in a meaningful way by the higher state court"); *cf. Greene v. Fisher*, 132 S. Ct. 38 (2011) (holding that "clearly established Federal law" under § 2254(d)(1) is that in effect at the time of the state court adjudication on the merits), and we accept the parties' invitation to review that decision under AEDPA's standard, *see* 28 U.S.C. § 2254(b)(2). Accordingly, we must affirm the District Court's denial of habeas relief unless the PCHA court's ruling on Prosdocimo's due process claim "was so lacking in justification [under existing Supreme Court precedent] that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

Prosdocimo argues that he has met that stringent standard because Rossi's testimony concerning the plea agreement was false, and due process is violated "when the State, although not soliciting false evidence [at trial], allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). We disagree with his conclusion for two reasons.

As a threshold matter, we reject the characterization of Rossi's testimony as "false evidence" that the Commonwealth would have an obligation to correct under *Napue*. It is

8

true that, while under cross-examination that was less than entirely clear, Rossi represented he had no immunity from a state prosecution for the McGregor and Pike murders. But he subsequently clarified in the same colloquy that the plea bargain "covered [his] prosecution on the Pike and McGregor case[s]." (J.A. at 442; *see* J.A. at 443 ("Like I explained to you before, sir, the only thing I know with regard to the Pike and McGregor case[s] is that those two murders I pled guilty under the Ricco [sic] Act, and it was my understanding that that covered that.").) Because Rossi indicated that his RICO plea agreement covered the murders that Prosdocimo contends Rossi falsely denied having immunity for, it can fairly be said that there was no false evidence to correct under *Napue*.[4] Thus, the PCHA court's decision was not "contrary to, or … an unreasonable application of" *Napue*. 28 U.S.C. § 2254(d)(1).

But even if we accept Prosdocimo's characterization of Rossi's testimony as false, the PCHA court's rejection of Prosdocimo's due process claim was not "an error well understood and comprehended in [*Napue*] beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87. *Napue*, after all, has sometimes been treated as a rule pertaining to the introduction of perjured testimony. *See, e.g.*, *Lambert*, 387 F.3d at 242 ("[I]n order to make out a constitutional violation [the petitioner] must show that (1) [the witness] committed *perjury*; (2) the government knew or should have

---

[4] In light of Rossi's clarification, his initial misstatements – which can be seen as a mere product of confusion – could not have prejudiced Prosdocimo's trial. *See Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004) ("[I]n order to make out a constitutional violation … there [must be a] reasonable likelihood that the false testimony could have affected the verdict.").

9

known of his *perjury*; (3) the testimony went uncorrected; and (4) there is any reasonable likelihood that the false testimony could have affected the verdict." (emphasis added)).[5] Perjury occurs when a witness "'gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory,'" *United States v. Hoffecker*, 530 F.3d 137, 183 (3d Cir. 2008) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94 (1993)), and as Prosdocimo wisely concedes, it is "impossible to know" from the record whether Rossi actually committed perjury under that standard,[6] (Appellant's Reply Br. at 2).

Because some courts have construed *Napue* to require perjury to establish a due process violation, the PCHA court's rejection of Prosdocimo's claim on the ground that there was no evidence Rossi perjured himself cannot be said to be "contrary to, or … an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"[7] 28 U.S.C. § 2254(d)(1), and habeas relief was therefore appropriately denied by the District Court.

---

[5] *See also United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010) ("To establish prosecutorial misconduct for the use of false testimony, a defendant must show the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony… ."); *United States v. Are*, 590 F.3d 499, 509 (7th Cir. 2009) (explaining that *Napue* does not "require the government to recall [a witness] … to clear up any possible confusion when the witness's testimony was not perjurious").

[6] As suggested *supra* note 4, however, Rossi's testimony may have been predicated on his confusion concerning the plea agreement's terms.

[7] Prosdocimo correctly observes that some precedent suggests due process can be violated under *Napue* even when the witness does not commit perjury. *See Hayes v. Brown*, 399 F.3d 972, 981 (9th Cir. 2005) (en banc) ("*Napue*, by its terms, addresses the presentation of false *evidence*, not just subornation of perjury."); *United States v. Harris*,

## III. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

---

498 F.2d 1164, 1169 (3d Cir. 1974) ("We do not believe … that the prosecution's duty to disclose false testimony by one of its witnesses is to be narrowly and technically limited to those situations where the prosecutor knows that the witness is guilty of the crime of perjury."). In at least some factual circumstances, it may be nonsensical to hold otherwise. *See Hayes*, 399 F.3d at 980-81 (rejecting the State's contention that "it is constitutionally permissible for it knowingly to present false evidence to a jury in order to obtain a conviction, as long as the witness used to transmit the false information is kept unaware of the truth"). However, for the purpose of federal habeas review, the rule of law upon which Prosdocimo relies must be "clearly established … as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Prosdocimo's claim is predicated on *Napue*, which does not clearly establish that due process can be violated even without proof of perjury.

We reject Prosdocimo's contention that a separate Supreme Court case, *Mesarosh v. United States*, 352 U.S. 1 (1956), does. In *Mesarosh*, the Supreme Court invalidated a federal conviction when the Solicitor General advised the Court that he believed "all of [a witness's] testimony to be untrue." *Id.* at 9. According to the Court, even if the witness's testimony did not constitute perjury, "[t]he dignity of the United States Government will not permit the conviction of any person on tainted testimony." *Id.* For the purposes of federal habeas review under § 2254(d)(1), *Mesarosh* does not establish a clear rule that a witness's uncorrected untruthfulness – whether perjurious or not – violates due process in all circumstances. *Mesarosh*, after all, only espoused a principle that a federal conviction cannot stand where it is procured based on testimony that is, according to the government's express representation, untruthful. Thus, *Mesarosh* does not establish a rule that would necessarily govern under the facts in Prosdocimo's case. *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (suggesting clearly established federal law consists of Supreme Court holdings in cases with materially similar or closely related facts).

11